FILED

2021 Sep-30  PM 03:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| J.C., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-01518-SGC |
| | ) | |
| ANITA WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

This case arises out of the removal of a minor child from the custody of his or her parents.  Pending before the court is a motion to dismiss filed by the defendant, Anita Williams, a social worker for Blount County Department of Human Resources ("Blount DHR") who effectuated the removal.  (Doc. 17).[2]  The plaintiffs, J.C. and T.A., the child's parents, and D.C. and B.C., the child's grandparents, have responded, and the motion is ripe for adjudication.  (Docs. 23, 27).  Also pending before the court is the plaintiffs' motion to strike one exhibit attached to Williams's motion to dismiss.  (Doc. 19).  For the reasons discussed below, the court will grant the plaintiffs' motion to strike and grant Williams's motion to dismiss.

---

[1] The parties consented to dispositive magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 20).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system, and appear in the following format: (Doc. __ at __).

## I.    Factual Allegations

In their second amended complaint, J.C. and T.A. allege they are the parents of a minor child.  (Doc. 12 at ¶ 6).  J.C., T.A., and the child lived in Knoxville, Tennessee.  (Doc. 12 at ¶ 6).  On January 25, 2016, they traveled to T.A.'s mother's house in Blount County, Alabama for an extended stay in her guest house.  (Doc. 12 at ¶ 7).  On March 18, 2016, Blount DHR received a report that J.C. and T.A. were smoking marijuana and had previously been arrested on drug charges.  (Doc. 12 at ¶ 8).  Williams, a social worker for DHR, investigated the report and learned from T.A. the family was temporarily staying in the guest house in Blount County.  (Doc. 12 at ¶ 9).  T.A. told Williams they had been in Blount County for three to four months.  (Doc. 12 at ¶ 10).

On March 23, 2016, T.A., J.C., and the child returned to their residence in Tennessee.  (Doc. 12 at ¶ 11).  On March 24, 2016, T.A.'s mother told Williams the family had returned to Tennessee.  (Doc. 12 at ¶ 12).  Williams went to the guest house that day, saw no one was present, and found a note from T.A. saying the family had left.  (Doc. 12 at ¶ 13).  Williams called a phone number for T.A. but no one ever answered.  (Doc. 28-2 at 2).  Williams received information that the family was avoiding DHR by claiming they were in Tennessee when actually they were staying with the paternal grandfather in Alabama.  (Doc. 28-2 at 2-3).

2

On March 29, 2016, Williams contacted the Knox County, Tennessee Department of Child and Family Services ("DCFS") and learned T.A. was on unsupervised probation and the charges against J.C. had been dropped. (Doc. 12 at ¶ 14). A Knox County DCFS employee informed Williams "there had been a case involving this family but there was no current case." (Doc. 12 at ¶ 14). The employee instructed Williams to contact the Knox County DCFS intake department if she had concerns about the child, but she never did. (Doc. 12 at ¶¶ 15–16).

On March 31, 2016, Williams filed a Petition For Dependency in the Juvenile Court of Blount County, Alabama. (Doc. 12 at ¶ 17). In the petition, Williams alleged T.A., J.C., and the child had lived in Alabama for three to four months, there was threatened danger to the child, and reasonable efforts had been made to prevent the child from being taken from the home of the parents. (Doc. 12 at ¶ 18). She also alleged she had learned J.C. and T.A. suffered from mental illness, had volatile arguments, and had not taken their child to the doctor since he was six weeks old. (Doc. 28-2 at 2). The Juvenile Court issued an Order for Temporary Shelter Care and Continuation of Hearing placing the child in DHR custody pending a hearing to be held on April 1, 2016. (Doc. 12 at ¶ 21). No hearing occurred on April 1, 2016. (Doc. 12 at ¶ 22).

Williams attempted to seize the child in Tennessee, but police prevented her from doing so without a Tennessee court order. (Doc. 12 at ¶ 23). So, on April 5,

3

2016, Williams obtained an Attachment Pro Corpus Order from a judge of the Juvenile Court of Knox County, Tennessee demanding an officer deliver the child to Alabama.  (Doc. 12 at ¶ 29).  Williams told the Tennessee judge that "as far as [her] knowledge," the child had lived in Alabama for six months.  (Doc. 12 at ¶ 26).  She did not tell the judge the child had returned to Tennessee before she filed the Petition For Dependency in Alabama.  (Doc. 12 at ¶ 28).

Pursuant to the Attachment Pro Corpus Order, on April 5, 2016, the child was seized in Tennessee, taken to Alabama, and placed in DHR custody.  (Doc. 12 at ¶ 30).  DHR did not observe the child's Jewish upbringing.  (Doc. 12 at ¶ 51).  DHR placed the child in a Christian teaching day care, forced the child to attend Christian religious services, and did not accommodate Jewish dietary practices.  (Doc. 12 at ¶¶ 51–52).

DHR subsequently placed the child in the custody of the child's paternal grandfather in Alabama and afforded visitation rights to T.A.'s mother against J.C. and T.A.'s wishes.  (Doc. 12 at ¶ 33).  On December 11, 2017, DHR returned the child to Tennessee and placed the child with plaintiffs D.C. and B.C., who are the child's maternal grandparents.  (Doc. 12 at ¶¶ 6, 34).  Finally, on May 2, 2019, the Blount County Juvenile Court dismissed the Petition For Dependency.  (Doc. 12 at ¶ 35).

Based on the foregoing allegations, the plaintiffs bring claims pursuant to 42 U.S.C. § 1983 alleging Williams violated their rights to the care, custody, control, and religious upbringing of a child guaranteed by the Due Process Clause of the Fourteenth Amendment, their rights to procedural due process guaranteed by the Fourteenth Amendment, and their rights to be free from unreasonable seizures guaranteed by the Fourth Amendment.  (Doc. 12 at ¶¶ 34–56.)[3]  The plaintiffs also bring claims for malicious prosecution and abuse of process under Alabama law. (Doc. 12 at ¶¶ 57–99).

Williams moves to dismiss all claims pursuant to Rules 12(b)(1) and 12(b)(6) of the *Federal Rules of Civil Procedure*.  (Doc. 17).  Williams asserts D.C. and B.C. lack standing to bring any claim, her qualified immunity bars the plaintiffs' § 1983 claims, and the plaintiffs failed to state plausible malicious prosecution and abuse of process claims.

---

[3] The court construes liberally the plaintiffs' second amended complaint in finding these alleged bases for their § 1983 claims.  The plaintiffs explicitly mention only their Fourteenth Amendment rights to the care, custody, control, and religious upbringing of the child (Doc. 12 at ¶ 36), but they also allege facts implicating violations of their Fourteenth Amendment procedural due process rights (*see* Doc. 12 at ¶¶ 44–46, 48, 50) and their Fourth Amendment rights to be free from unreasonable seizures in the form of malicious prosecution (*see* Doc. 12 at ¶¶ 37–43, 47).  The parties have briefed all three § 1983 claims.

## II.     Standards of Review

### A.     <u>Rule 12(b)(1) Motion to Dismiss for Lack of Standing</u>

Rule 12(b)(1) of the *Federal Rules of Civil Procedure* permits a defendant to move to dismiss a complaint for lack of subject matter jurisdiction.  "Because a motion to dismiss for lack of standing is one attacking the district court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)."  *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.8 (11th Cir. 1993). Where, as here, the defendant makes a "facial attack" on a plaintiff's standing, asserting the complaint does not allege a sufficient basis for standing, the court evaluates whether "the [] complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion."  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013).

### B.     <u>Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim</u>

A motion to dismiss under Rule 12(b)(6) of the *Federal Rules of Civil Procedure* requires an evaluation of the sufficiency of the complaint in light of Rule 8's pleading requirements.  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*,

6

355 U.S. 41, 47 (1957)).  While "detailed factual allegations" are not required by Rule 8, "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" is required to survive a motion to dismiss under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

Courts employ a two-part test to evaluate the sufficiency of a complaint.  First, "the court should eliminate any allegations in the complaint that are mere legal conclusions." *Shanks v. Potter*, 451 F. App'x 815, 817 (11th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).  Next, the court should "assume the veracity of the well-pleaded factual allegations and determine whether they 'plausibly suggest an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  If the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" then the court must grant the motion to dismiss.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III.   Discussion

### A.   <u>Exhibits Filed in Support of the Motion to Dismiss</u>

Williams filed three exhibits—labeled Exhibits A, C, and D—under seal in support of her motion to dismiss. (Docs. 28-2, 28-3, 28-4).[4]  The court has discretion to consider matters outside the pleadings on a motion to dismiss. *Jones v. Auto. Ins. Co. of Hartford, Conn.*, 917 F.2d 1528, 1531–32 (11th Cir. 1990).  If it does, then generally the court must convert the motion to dismiss into a Rule 56 motion for summary judgment.  FED. R. CIV. P. 12(d).  However, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

---

[4] There are discrepancies between what Williams said she would file and what she ultimately did file.  Williams referenced four proposed exhibits in her motion to dismiss, designated Exhibit A, Exhibit D, and two different documents both called Exhibit C.  (*See* Doc. 17 at 2–4, 9, 11, 13).  She did not attach the exhibits to the motion to dismiss because the parties agreed the exhibits should be filed under seal. (Doc. 18 at 1).  After the court entered a protective order and permitted Williams to file the exhibits under seal, Williams filed only three of the proposed exhibits; she filed only one document labeled Exhibit C and did not file a document labeled Exhibit B.  (Doc. 28).  Williams gave two different descriptions for proposed Exhibit C in her motion to dismiss; she initially identified it as the Shelter Care Order the Juvenile Court of Blount County entered on March 31, 2016, (Doc. 17 at 3) but later described proposed Exhibit C as a document showing "J.C. pleaded under oath that she was a resident of Alabama" (Doc. 17 at 11).  Williams ultimately filed a document matching the latter description as Exhibit C.  (Doc. 28-3).  The March 31, 2016 Shelter Care Order is not in the record.

Exhibit A is the Petition For Dependency Williams filed in the Juvenile Court of Blount County, Alabama on March 31, 2016. (Doc. 28-2). The plaintiffs acknowledge the Petition "is referenced in the complaint and its filing is the basis for the malicious prosecution claims, consequently it is an undisputed document central to [the] plaintiff[s'] claims." (Doc. 19 at ¶ 1). The court agrees. *See Edwards v. Mashego*, No. 2:18-CV-01954-RDP, 2020 WL 1847866, at *3 (N.D. Ala. Apr. 13, 2020) (finding a Petition For Dependency was "obviously central to" the plaintiffs' claims that the Petition violated their constitutional rights). Accordingly, the court will consider Exhibit A without converting the motion to dismiss into a motion for summary judgment.

But the court will not consider Exhibit C, which the plaintiffs have moved to strike. (Doc. 19).[5] Exhibit C is a "Petition For Protection From Abuse" J.C. filed in Blount County on March 30, 2016. (Doc. 28-3). Williams alleges the Petition For Protection From Abuse shows J.C. pleaded under oath she was a resident of Alabama. (Doc. 17 at 3). The Petition For Protection From Abuse itself is not central to any claims. Nonetheless, the court will consider Williams's understanding of the Petition For Protection From Abuse referenced in her Petition For Dependency because the Petition For Dependency is central to the plaintiffs' claims. Therefore,

---

[5] The plaintiffs moved to strike "proposed Exhibit B (the Petition for Protection from Abuse)," which is actually Exhibit C. (Doc. 19 at ¶ 2; *see* Doc. 28-3).

the court will grant the plaintiffs' motion to strike (Doc. 19) and excludes Exhibit C from consideration of the motion to dismiss.

Likewise, the court will not consider Exhibit D.  Exhibit D is a Temporary Order entered by the Juvenile Court for Blount County, Alabama on April 26, 2016, placing the child in DHR custody.  (Doc. 28-4).  The plaintiffs acknowledge they refer to the Temporary Order twice in their second amended complaint and do not object to the court considering it.  (Doc. 19 at ¶ 4).  However, the Temporary Order is not central to the plaintiffs' § 1983 claims even though they allege it was one result of Williams's actions taken on April 5, 2016.  (*See* Doc. 12 at ¶ 95).  Instead, the Temporary Order is possibly central only to the plaintiffs' state law abuse of process claim because the plaintiffs allege the Juvenile Court entered the Temporary Order without a hearing.  (Doc. 12 at ¶ 96).  If the court were to exercise supplemental jurisdiction over the state law abuse of process claim, then it might consider Exhibit D only for purposes of that claim.  But, as discussed below, the court will decline to exercise supplemental jurisdiction over the state law claims, so it will not consider Exhibit D.

**B.    <u>D.C. and B.C.'s Standing</u>**

Williams asserts D.C. and B.C. lack standing to bring any claim.  To establish standing under Article III, a plaintiff must show: (1) an "injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) the injury is

likely redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations, quotation marks, and alterations omitted). The injury in fact must be "an invasion of a legally protected interest" that is "concrete and particularized . . . and actual or imminent, not conjectural or hypothetical." *Id.* (internal citations and quotation marks omitted).

Here, D.C. and B.C. allege they suffered an injury in fact to confer standing because "[t]hey have suffered mental anguish and had to expend money on account of the malicious prosecution of the Petition for Dependency and the prosecution of the Attachment Pro Corpus." (Doc. 23 at 1–2). In particular, they allege they spent $200,000 for attorneys' fees and expenses necessary to locate the child in April and May 2016, to return the child to Tennessee, to comply with DHR's demands, to pay for care and custody of the child, and to travel to Alabama for hearings and events. (Doc. 12 at ¶¶ 54, 75, 98).

But D.C. and B.C., the child's grandparents, have not alleged a legally protected interest in the custody of the child. Parents have a fundamental right under the Due Process Clause of the Fourteenth Amendment to make decisions concerning the care, custody, and control of their children. *Troxel v. Granville,* 530 U.S. 57, 66 (2000). No law provides grandparents have the same right with respect to their grandchildren. *See Miller v. California*, 355 F.3d 1172, 1175 (9th Cir. 2004) ("While there is no question that *parents* have a constitutionally protected liberty

interest in making decisions about the care, custody, and control of their children, . . . we have never held that any such right extends to *grandparents*.") (emphasis in original); *Russell v. Sanilac Cty.*, No. 14-13134, 2015 WL 5626628, at *3 (E.D. Mich. Sept. 24, 2015) ("[A]s the Supreme Court explained in *Troxel*, the child's parents, not the grandparents, have a fundamental right to 'make decisions concerning the care, custody, and control of their children.'").

Furthermore, D.C. and B.C. were not the subject of any prosecution or proceeding.  Rather, they merely financially supported J.C. and T.A.'s efforts to regain custody of their child.  That financial support is not the result of an invasion of D.C. and B.C.'s right to be free from malicious prosecution, and they cannot rest their claims on J.C. and T.A.'s rights.  *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1265 (11th Cir. 2015) ("[A] litigant ordinarily must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.") (internal quotation marks omitted); *Langham v. Wampol*, 902 So. 2d 58, 62 (Ala. Civ. App. 2004) ("The Langhams lack standing to bring a suit for their individual claims of malicious prosecution because they were not the subject of the allegedly malicious prosecution.").

For these reasons, the court will dismiss D.C. and B.C.'s § 1983 claims for lack of standing pursuant to Rule 12(b)(1).[6]  Even if they did have standing, for the reasons explained below, the court still would dismiss their § 1983 claims pursuant to Rule 12(b)(6).

### B.    Section 1983 Claims

Title 42 U.S.C. § 1983 provides a cause of action against a person acting under color of state law for the deprivation of a federal statutory or constitutional right. However, government officials performing "discretionary functions" are entitled to qualified immunity from § 1983 claims "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  A discretionary function is "a legitimate job-related function" performed "through means . . . within [the official's] power to utilize."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  If the official establishes she was performing a discretionary function, then to overcome qualified immunity, the plaintiff must show: "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  *Id.* at 1264.

---

[6] There is no need to address D.C. and B.C.'s standing to bring their state law claims because, as explained below, the court declines to exercise supplemental jurisdiction over those claims.

A "clearly established right" is "one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted).  The Supreme Court "do[es] not require a case directly on point" for a right to be clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks omitted).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft*, 563 U.S. at 742.  For example, "[t]he general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help" in determing whether a right is clearly established for purposes of qualified immunity. *Id.*  Instead, "the clearly established law must be particularized to the facts of the case." *White*, 137 S. Ct. at 552 (internal quotation marks omitted).  "The dispositive question is whether the violative nature of *particular* conduct is clearly established," and "[t]his inquiry must be undertaken in light of the specific context of the case." *Mullenix*, 577 U.S. at 12 (emphasis in original) (internal quotation marks omitted).  In other words, "identifying a right that the defendant allegedly violated is not enough; rather, the

14

plaintiff must show that 'the right's contours were sufficiently definite that *any* reasonable official in the defendant's shoes would have understood' that *what he did* violated that right." *Hammonds v. Theakston*, No. 4:16-CV-01558-KOB, 2019 WL 4572877, at *4 (N.D. Ala. Sept. 20, 2019), *aff'd*, 833 F. App'x 295 (11th Cir. 2020) (emphasis in original) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)).

The Eleventh Circuit has "identified three different ways a plaintiff can show that the state of the law gives officials fair warning of a clearly established right." *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019). First, the plaintiff can "show that a materially similar case has already been decided." *Id.* (internal quotation marks omitted). Second, the plaintiff can "show that a broader, clearly established principle should control the novel facts of a particular situation." *Id.* (internal quotation marks omitted). Third, the plaintiff can "show that her case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Id.* (internal quotation marks omitted). "Notwithstanding the availability of these three independent showings, [the Eleventh Circuit] has observed on several occasions that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (internal quotation marks omitted). And "[Eleventh Circuit] case law has made clear that 'obvious clarity' cases" in which "a broad principle of law clearly establishes the law as to a specific set of facts . . . to the point that every

objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted . . . will be rare." *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) (internal quotation marks omitted).

Moreover, "[b]ecause qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right [against an official who was acting within her discretionary authority]." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal quotation marks omitted).

With the foregoing principles in mind, the undersigned addresses below why the plaintiffs have not alleged a sufficient basis for finding Williams is not entitled to qualified immunity.

### 1.    Williams Was Acting Within Her Discretionary Authority

Williams was acting within the scope of her discretionary authority at all times relevant to the factual allegations in pursuing the welfare of the child. *See* Ala. Code § 38-2-8(b) (delegating "the care of children who are dependent, neglected, under

16

insufficient guardianship or otherwise handicapped" to DHR).  By investigating the report concerning the child's welfare, filing the Petition For Dependency, enforcing the Order for Temporary Shelter Care, and effectuating the child's placement in DHR custody in Alabama, Williams was performing legitimate job-related functions through means that were within her power to utilize.  *See Edwards*, 2020 WL 1847866, at *4 (finding DHR employees' "duties encompass, among other things, child dependency investigations"); Ala. Code § 26-14-6 (authorizing DHR employees to "take a child into protective custody . . . without the consent of the parent or guardian" if there is "an imminent danger to that child's life or health").  The plaintiffs do not dispute this point.  So the burden now shifts to the plaintiffs to sufficiently allege Williams violated their clearly established constitutional or statutory rights.

### 2.    Williams Did Not Violate Any Clearly Established Constitutional Or Statutory Rights

As mentioned above, the plaintiffs allege Williams violated three of their constitutional rights.  They allege Williams violated their rights to the care, custody, control, and religious upbringing of the child guaranteed by the Due Process Clause of the Fourteenth Amendment and their Fourth Amendment right to be free from unreasonable seizures in the form of malicious prosecution, by filing and prosecuting the Petition For Dependency without probable cause, making no efforts to avoid the

child being taken from the parents, refusing to contact the intake department of Knox County DCFS, lying to the Tennessee judge to attain the Attachment Pro Corpus Order, and not observing the child's Jewish upbringing while in DHR custody. (Doc. 12 at ¶¶ 25–29, 36–47, 51–53; *see* Doc. 23 at 2–11).  In addition, the plaintiffs allege Williams violated their Fourteenth Amendment procedural due process rights because they were not afforded an opportunity to be heard before the child was removed from their custody.  (Doc. 12 at ¶¶ 31–32; *see* Doc. 23 at 8–10).  Also, the plaintiffs allege the Tennessee Attachment Pro Corpus Order violated procedural due process because the order has no case number, the Knox County Clerk's office has no record of the order, no documents related to the order were filed in court, and no hearing related to the order took place.  (Doc. 12 at ¶¶ 29, 32; *see* Doc. 23 at 10). The court addresses each allegation in turn.

> **a.   Williams Did Not Violate A Clearly Established Fourth Or Fourteenth Amendment Right When She Filed The Petition For Dependency**

The Fourth Amendment right to be free from unreasonable seizures protects people from malicious prosecution, which occurs when a government official, among other things, initiates or continues a prosecution "with malice and without probable cause."  *Wood v. Kesler*, 323 F.3d 872, 881–82 (11th Cir. 2003).  And the Due Process Clause of the Fourteenth Amendment "protects the fundamental right

of parents to make decisions concerning the care, custody, and control of their children." *Troxel,* 530 U.S. at 66.

The plaintiffs contend Williams violated their clearly established Fourth and Fourteenth Amendment rights by filing the Petition For Dependency with malice and without probable cause. (Doc. 12 at ¶¶ 36, 42; *see* Doc. 23 at 2–8). Allegedly, Williams had malice and lacked probable cause because she knew the child was not present in Alabama on March 31, 2016, and therefore knew the Alabama courts lacked jurisdiction over the child and because the child was not dependent or in danger. (Doc. 12 at ¶¶ 37–44; *see* Doc. 23 at 2–8). The court disagrees.

True, the child was not in Alabama on March 31, 2016, and the Alabama courts therefore lacked temporary emergency jurisdiction over the child when Williams filed the Petition For Dependency. *See* Ala. Code § 30-3B-204(a) (establishing the Alabama courts' "temporary emergency jurisdiction" over a child only if "the child is present in this state"). But that fact does not show Williams violated clearly established law.

Rather, despite the Alabama courts' lack of temporary emergency jurisdiction, no clearly established law provided Williams fair and clear notice filing the Petition For Dependency would violate the plaintiffs' constitutional rights when Williams had reasonable cause to believe the child was likely in Alabama on March 31, 2016. Williams found the family in Alabama on March 18, 2016; T.A. told Williams the

family had been in Alabama for three to four months; Williams found a note from

T.A. on March 24, 2016, saying the family had returned to Tennessee; T.A. did not

answer Williams's phone calls; Williams received information that the family was

avoiding DHR by claiming they were in Tennessee when actually they were staying

with the paternal grandfather in Alabama; and Williams understood J.C. claimed to

live in Alabama and Tennessee on March 30, 2016.  (Doc. 12 at ¶¶ 10, 12–13; Doc.

28-2 at 2–3).  With this information, Williams reasonably believed the child was

likely still in Alabama on March 31, 2016.  Of course, she was mistaken, but that

does not make her conduct any less reasonable under the circumstances and therefore

does not defeat her qualified immunity.  *See Stanley v. City of Dalton, Ga.*, 219 F.3d

1280, 1294 n.4 (11th Cir. 2000) ("Our prior decisions discuss in depth the policy

reasons why the qualified immunity defense allows for reasonably mistaken

beliefs.").

Moreover, no clearly established law provided Williams fair and clear notice

filing the Petition For Dependency would violate the plaintiffs' constitutional rights

when Williams reasonably believed the child was in danger.  Federal and state law

informed Williams the child could be removed from the plaintiffs' custody if she

had reasonable grounds to believe the child was in imminent danger.  *See Doe v.

Kearney*, 329 F.3d 1286, 1293 (11th Cir. 2003) ("[A] state may constitutionally

remove children threatened with imminent harm when it is justified by emergency

circumstances."); Ala. Code § 12-15-306(a)(1) ("A child may be removed by a law enforcement officer from the custody of a parent . . . if there are reasonable grounds to believe . . . that the removal of the child is necessary for the protection of the health and safety of the child.").  The information Williams received regarding the parents' drug use, criminal history and activity, mental disorders, volatile arguments, and deficient medical care of the child (*see* Doc. 12 at ¶¶ 8, 14; Doc. 28-2 at 2–3), provided reasonable grounds to believe removal was necessary for the child's safety. *See Doe*, 329 F.3d at 1298 (finding a child's emergency removal was justified when the state received information about the father's sexual abuse and criminal history); *Edwards*, 2020 WL 1847866, at *6 (finding a child's emergency removal did not violate the parents' Fourteenth Amendment rights when officials learned the father hit the child and was arrested for possession of marijuana); *A.A. v. Eubanks*, No. 2:19-CV-00726-MHH, 2020 WL 374833, at *4 (N.D. Ala. Jan. 23, 2020) (finding DHR did not violate a mother's clearly established constitutional rights by removing her child from her custody because DHR reasonably believed the child was in danger of sexual abuse).  Accordingly, Williams did not violate the plaintiffs' clearly established rights.

### b. Williams Did Not Violate A Clearly Established Fourth Or Fourteenth Amendment Right When She Appeared Before The Tennessee Judge

Williams told the Tennessee judge, "as far as [her] knowledge," the child had lived in Alabama for six months. (Doc. 12 at ¶ 26). But the child had lived in Alabama for only two months. (*See* Doc. 12 at ¶¶ 7, 11). The plaintiffs argue "it is obvious the [Tennessee] judge would have refused to enter the Attachment Pro Corpus order and the Alabama action would be dismissed" if Williams had not told the judge the child was in Alabama for six months. (Doc. 23 at 8). They assert Williams therefore violated their Fourth and Fourteenth Amendment rights. (Doc. 12 at ¶ 53; Doc. 23 at 7–8). And they contend two cases, *Ex parte Siderius*, 144 So. 3d 319 (Ala. 2013), and *Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020), clearly establish Williams's conduct was unconstitutional. (Doc. 23 at 7–8). But neither case does so.

*Siderius* plainly demonstrates the six-months issue is inapposite to this case. In *Siderius*, a mother petitioned the Alabama Supreme Court for a writ of mandamus directing a lower court to dismiss the father's action for custody of their child. The central issue was whether the Alabama lower court had jurisdiction over the custody proceeding. *Siderius*, 144 So. 3d at 323. The Alabama Supreme Court found, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, an Alabama court may "make an initial child-custody determination . . . '[e]xcept as

otherwise provided [by temporary emergency jurisdiction]'" if the child lived in Alabama "'for at least six consecutive months immediately before the commencement of a child custody proceeding.'"  *Id.* at 324 (quoting Ala. Code §§ 30-3B-102(7), -201).  So the six-months issue to which the plaintiffs refer bears on Alabama's jurisdiction to make non-emergency initial custody determinations. The issue is unrelated to the Tennessee court's Attachment Pro Corpus Order or the Alabama court's Order for Temporary Shelter Care.

*Aguirre* is equally unavailing.  There, an arrestee brought a § 1983 claim against police officers alleging they lied in a warrant application to establish probable cause to arrest.  In finding genuine issues of material fact as to the officers' qualified immunity precluding summary judgment, the Eleventh Circuit stated, "the law [is] clearly established . . . that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen . . . if such false statements were necessary to the probable cause."  *Aguirre*, 965 F.3d at 1168–69.  But the present case does not involve a police officer's false statements in an arrest affidavit, and the child's presence in Alabama for six months was not necessary for the Attachment Pro Corpus Order.  *Aguirre*, therefore, is not clearly established law that strips Williams of qualified immunity.

### c.   Williams Did Not Violate A Clearly Established Fourth Or Fourteenth Amendment Right Through Any Other Conduct

Williams is entitled to qualified immunity from the Fourth and Fourteenth Amendment claims with respect to all other allegedly wrongful actions. Williams did not violate the plaintiffs' constitutional rights by not making reasonable efforts to avoid the child being taken from the parents' home before filing the Petition For Dependency. Again, Williams removed the child based on reasonable grounds to believe removal was necessary to protect the child's health and safety. In such circumstances, Williams did not need to make reasonable efforts to avoid taking the child from the plaintiffs' home. *See Doe*, 329 F.3d at 1298; Ala. Code §§ 12-15-306, 26-14-6.

Likewise, no law provided Williams fair and clear notice that not contacting the intake department of Knox County DCFS would violate the plaintiffs' constitutional rights. The Knox County DCFS employee who told Williams to do so is not a source capable of creating clearly established law. *See Coffin*, 642 F.3d at 1013 ("Our Court looks only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation.").

Finally, the plaintiffs have not alleged any facts showing Williams knew or should have known about the child's Jewish upbringing, so no law could possibly have given Williams fair and clear notice that not accommodating Jewish practices while the child was in DHR custody constituted deliberate indifference to the plaintiffs' Fourteenth Amendment rights.  *Cf. Steele v. Shah*, 87 F.3d 1266, 1269 (11th Cir. 1996) ("[A] finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk.") (citing  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

### d.      Williams Did Not Violate A Clearly Established Procedural Due Process Right

As a general rule, "before parents may be deprived of the care, custody or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them." *Doe*, 329 F.3d at 1293 (internal quotation marks omitted).  "At a minimum, due process requires timely notice, in advance of a hearing in which parents' rights to custody are at stake." *Dykes v. Hosemann*, 743 F.2d 1488, 1494 (11th Cir. 1984). Due process requires an opportunity for the parents to be heard, "except for extraordinary situations where some valid governmental interest is at stake that justifie[s] postponing the hearing until after the event." *Id.* (internal quotation marks omitted).

At the same time, "the State has a profound interest in the welfare of the child, particularly his or her being sheltered from abuse." *Doe*, 329 F.3d at 1293 (internal quotation marks omitted).   Accordingly, "a state may constitutionally remove children threatened with imminent harm when it is justified by emergency circumstances." *Id.*

In *Doe*, parents brought § 1983 claims alleging Florida's statute authorizing the emergency removal of children without a hearing violated the parents' procedural due process rights.   The Florida statute was substantially similar to the Alabama emergency removal statute.   *Compare* Fla. Stat. § 39.401(1) ("A child may only be taken into custody . . . by a law enforcement officer, or an authorized agent of the department, if the officer or authorized agent has probable cause to support a finding . . . [t]hat the child . . . is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment" or "has no parent . . . available to provide supervision and care."), *with* Ala. Code § 12-15-306(a) ("A child may be removed by a law enforcement officer from the custody of a parent . . . if there are reasonable grounds to believe . . . [t]he child . . . is in imminent danger from the surroundings of the child and that the removal of the child is necessary for the protection of the health and safety of the child" or "has no parent . . . able to provide supervision and care for the child.").   The Eleventh Circuit found the Florida statute did not violate procedural due process because the Due Process Clause does not require a hearing

with the parents before removing their child from their custody when probable cause exists to believe the child is threatened with imminent harm. *Doe*, 329 F.3d at 1295, 1298–99.

There, pursuant to *Doe*, the plaintiffs here did not have a clearly established Fourteenth Amendment right to a hearing before the child was removed from their custody when Williams had reasonable grounds to believe the child was in imminent danger. Furthermore, the plaintiffs have not shown how the alleged flaws with the Tennessee Attachment Pro Corpus Order—it lacks a case number, is not recorded in the Knox County Clerk's Office, and has no related documentation filed in court— bear any relation to Williams's conduct. Certainly, no law provided Williams fair and clear notice she would violate the plaintiffs' constitutional rights if she obtained an Attachment Pro Corpus Order that presented the flaws alleged.

For the foregoing reasons, Williams is entitled to qualified immunity with respect to all of the plaintiffs' § 1983 claims. The court will dismiss those claims with prejudice pursuant to Rule 12(b)(6).

### C.   <u>State Law Claims</u>

Because the § 1983 claims are due to be dismissed, only the plaintiffs' state law malicious prosecution and abuse of process claims will remain in this case. The undersigned declines to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3), which permits a federal district court to decline

the exercise of supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction."  When determining whether to decline the exercise of supplemental jurisdiction under § 1367(c)(3), a court should consider judicial economy, convenience, fairness to litigants, and comity.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988). This case is in the early stages of litigation, such that the interests of fairness and judicial economy would not be disserved by declining the exercise of supplemental jurisdiction.  Furthermore, comity suggests the Alabama courts should be allowed to decide claims arising under Alabama law.  *See Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.").  Finally, the Eleventh Circuit has encouraged district courts to dismiss remaining state law claims when federal claims have been dismissed prior to trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).  For these reasons, the court will dismiss the malicious prosecution and abuse of process claims without prejudice.

## IV.   Conclusion

For the foregoing reasons, the court will grant the plaintiffs' motion to strike. (Doc. 19).  The court also will grant Williams's motion to dismiss.  (Doc. 17).  The court will dismiss D.C. and B.C.'s § 1983 claims for lack of standing pursuant to Rule 12(b)(1).  Williams is entitled to qualified immunity with respect to all of the

plaintiffs' § 1983 claims, so the court will dismiss those claims with prejudice pursuant to Rule 12(b)(6).  Given the court will dismiss all of the federal claims in this case, the undersigned declines to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims, so the court will dismiss those claims without prejudice.  A separate order will be entered.

   **DONE** this 30th day of September, 2021.


_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE