FILED
2023 Sep-27  PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JANEMARIE CRIDER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-01518-SGC |
| | ) | |
| ANITA WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Defendant Anita Williams has moved to dismiss the third amended complaint filed by plaintiffs Janemarie Crider ("Crider") and Tucker Anderson ("Anderson") (collectively, "the Parents"). (Doc. 55).[2] Williams's motion is fully briefed and ripe for adjudication. (Docs. 55, 58, 60). The Parents have also moved (1) to strike the evidence Williams attached to her reply brief and the arguments based on those documents and (2) for permission to file a sur reply. (Docs. 62, 63, 65). For the reasons stated below, the Parents' motion to strike will be granted, their motion to permit a sur reply will be denied, and Williams's motion to dismiss will be denied.

---

[1] The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 20).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __)

## I.   Allegations of the Parents' Complaint

The Parents have a minor child (the "Child"), born in Tennessee in 2015. (Doc. 54 at 2). The Child lived in Tennessee until January 2016, when the Parents and Child traveled to Blount County, Alabama, for an extended stay as guests of Anderson's mother, Andrea Anderson ("Andrea"). (*Id.* at 3). In March 2016, Andrea told the Parents she had a friend who worked as a caseworker with the Blount County Department of Human Resources ("DHR") and would have the Child taken from the Parents if they did not permit Andrea visitation with the Child. (*Id.* at 23).

In March 2016, someone reported to DHR that the Parents were smoking marijuana and had been arrested on drug charges. (*Id.* at 3). Williams, an investigator with the Alabama Department of Human Resources, visited Andrea's guest home, where the Parents were staying, and spoke with Anderson. (*Id.*). During that meeting, Anderson informed her they had only been in Alabama for 3-4 months. (*Id.*). Williams recorded in writing that the Child had no obvious bruises and appeared healthy. (*Id.*).

Seven days after Williams visited them, the Parents returned to their home in Tennessee. (*Id.* at 4). The following day, Andrea told Williams the Parents and Child had returned to Tennessee. (*Id.*). Williams visited Andrea's guest house,

where the Parents had stayed, and saw no one was present. (*Id.*). She also saw a note stating the Parents and Child had left. (*Id.*).

Five days later, on March 29, 2016, Williams contacted the Knox County, Tennessee Department of Child and Family Services (the "Tennessee DCFS"). (*Id.*). She learned (1) Anderson was on unsupervised probation, (2) criminal charges against Crider had been dropped, and (3) although there had been a case involving the family, there was not a current case. (*Id.*). She was instructed to contact the intake department of the Tennessee DCFS if she had any concerns and the Child was likely in Tennessee. (*Id.*). She agreed to do so. (*Id.*).

Instead of contacting the Tennessee DCFS, and even though she had been told the Child and Parents had returned to their Tennessee home, Williams filed a verified Petition for Dependency in the Juvenile Court of Blount County, Alabama (the "Juvenile Court"), on March 31, 2016. (*Id.* at 5). She alleged (1) Anderson had informed her the Parents and Child had lived in Alabama only 3-4 months, (2) there was a threatened danger to the Child, and (3) reasonable efforts were made to prevent the Child from being taken from the Parents' home. (*Id.*). That same day, the Juvenile Court granted temporary physical and legal custody to DHR pending a hearing scheduled for the following day. (*Id.*). However, no hearing was held. (*Id.*).

In April 2016, Williams traveled to Tennessee to seize the Child, but police there told her she needed a Tennessee court order to do so. (*Id.*). Williams then

appeared *ex parte* in front of a Knox County, Tennessee judge and requested an order permitting her to seize the Child. (*Id.* at 5-6). The judge asked her whether the Child had lived in Alabama for at least six months; despite knowing otherwise, Williams falsely replied that as far as she knew, the Child had lived in Alabama for at least six months. (*Id.* at 6). She did not tell the Knox County judge the Parents said they had been in Alabama for less than six months and that she was told they had returned to their home in Tennessee. (*Id.*).

Based on Williams's representations, the Knox County judge signed an order commanding an officer to deliver the Child to Alabama DHR.[3] (*Id.* at 7). Based on the order, the Child was seized and taken back to Alabama against the Parents' wishes. (*Id.*). The Parents were not given an opportunity to appear before a Tennessee court to contest the Child's seizure and removal to Alabama. (*Id.*).

The Child was placed in unknown foster care, and the Parents did not discover his location or condition for more than a month. (*Id.* at 7). They expended considerable resources to locate him and suffered considerable mental anguish. (*Id.* at 8). The Child was eventually placed with Anderson's father in Cullman, Alabama, and Andrea was allowed to have unsupervised visitation with the Child against the Parents' wishes. (*Id.* at 25).

---

[3] This order has no case number, was not filed or otherwise recorded in the Knox County Clerk's office, and has no related petition or documentation. (Doc. 54 at 7).

4

On December 11, 2017, the Child was returned to the Parents' custody in Tennessee. (*Id.* at 8). On May 2, 2019, Williams dismissed the Petition for Dependency, and that order is now final. (*Id.*).

Williams submitted two orders from the Juvenile Court in support of her motion to dismiss. (Doc. 55 at 16-21). The first is dated April 26, 2016, and titled "Temporary Order" (the "April 2016 Order"). (*Id.* at 19-20). That order states the Juvenile Court heard only oral arguments from counsel because there was insufficient time to hold a full hearing, but the order does not describe the substance of the parties' arguments. The Juvenile Court found the Child should be placed in DHR's care because (1) there was no suitable parent willing and able to provide for the Child, (2) it was not possible for Blount County DHR to make reasonable efforts to prevent the removal of the Child from his home, (3) continuation in the home was contrary to the Child's welfare, and (3) placement in foster care was the least restrictive alternative available that was compatible with the Child's best interests. (*Id.* at 19). The order also set a trial date of August 23, 2016. (*Id.* at 20).

The second order is dated October 30, 2018 (the "October 2018 Order"), and was issued following an August 23, 2016 hearing on a joint motion to transfer filed by the Parents and the Child's maternal grandparents. (*Id.* at 21). Again, the order states the Juvenile Court heard oral argument from all parties, but it does not

describe the arguments made or indicate any testimony was taken. (*Id.*). During the hearing, the court conferred with the Knox County judge who signed the order to seize the Child. (*Id.*). That judge declined and refused to accept jurisdiction of the case because he had already enforced an Alabama state order to seize the Child and it would be inconsistent for him to later accept jurisdiction of the case. (*Id.*). The Juvenile Court found (1) the Child and Parents were residing in Blount County, Alabama, at the time of the incidents alleged in the Petition for Dependency, (2) no other court accepted jurisdiction of the action, and (3) the Blount County juvenile court was the appropriate jurisdiction for trial of the Petition for Dependency. (*Id.*). Based on those findings, the joint motion to transfer was denied. (*Id.*).

## II.     Procedural History

The Parents filed this action on October 1, 2020. (Doc. 1). They amended their complaint once as a matter of course before Williams answered. (Doc. 4). They again amended their complaint with leave of court on December 14, 2020, stating three counts: (1) a violation of 42 U.S.C. § 1983; (2) an Alabama state law claim for malicious prosecution; and (3) an Alabama state law claim for abuse of process. (Doc. 12).

Williams moved to dismiss the second amended complaint, and the court granted the motion on September 30, 2021. (Docs. 17, 30, 32). This court (1) dismissed the claims of then-plaintiffs Dwight and Brenda Crider, the Child's

maternal grandparents, because they lacked standing, (2) dismissed the Parents' § 1983 claim because it found Williams was entitled to qualified immunity, and (3) declined to exercise supplemental jurisdiction over the remaining state law claims. (Doc. 30 at 13, 27, 28).

The Parents appealed, and on August 30, 2022, the Eleventh Circuit issued its opinion vacating this court's dismissal and remanding the case. (Doc. 51-1). The Eleventh Circuit concluded (1) Williams was not entitled to qualified immunity at this stage of the litigation and (2) this court erred in declining to exercise supplemental jurisdiction over the Parents' state law claims because it had original diversity, not supplemental, jurisdiction over those claims. (*Id.*).

After the Eleventh Circuit issued its opinion, Williams answered the second amended complaint. (Doc. 46). The parties were then ordered to meet and confer to propose new deadlines for discovery and dispositive motions. (Doc. 48). The parties filed their proposed scheduling order on September 27, 2022. (Doc. 50).

On September 26, 2022, the Parents sought leave to again amend their complaint. (Doc. 49). Their motion was granted, and they filed their third amended complaint on October 14, 2022. (Doc. 54). The Parents bring three counts: (1) a violation of 42 U.S.C. § 1983; (2) malicious prosecution; and (3) abuse of process.

Williams moved to dismiss the third amended complaint on November 4, 2022, attaching to her initial motion the April 2016 and October 2018 Orders.

After the Parents responded to her motion to dismiss, Williams filed a reply brief, along with several new exhibits spanning 62 pages. (Docs. 58, 60). Those newly filed documents include:

(1) A March 2016 Order to Detain and Amended Order for Temporary Shelter Care, issued by the Juvenile Court;

(2) A Petition for Writ of Habeas Corpus filed by the Parents against DHR in the Blount County Circuit Court;

(3) An April 2016 Attachment Pro Corpus order from the Juvenile Court of Knox County, Tennessee;

(4) Two Amended Petitions for Writ of Habeas Corpus;

(5) An Order from the Blount County Circuit Court denying the Petition for Writ of Habeas Corpus, finding the Parents and Child were present in Alabama in March 2016 and the Juvenile Court had jurisdiction to adjudicate allegations of conduct regarding a minor child that occurred in Blount County;

(6) The Parents' principal brief appealing to the Alabama Court of Civil Appeals the denial of their Petition for Writ of Habeas Corpus;

(7) The Court of Civil Appeals' opinion on rehearing, finding the Blount County Circuit Court lacked subject-matter jurisdiction to consider the Parents' Petition for Writ of Habeas Corpus and directing the lower court to set aside its void judgment;

(8) A motion to transfer filed by the Parents in the Juvenile Court;

(9) A motion for reconsideration of the Juvenile Court's October 2018 Order;

(10) An Order denying the motion for reconsideration; and

(11) An Amended Order dismissing DHR as a party and consolidating DHR's Petition for Dependency with another petition filed by one of the Child's grandparents.

(Doc. 60-1).

8

The Parents moved to strike the newly-submitted exhibits and all arguments based on them. (Doc. 62). They also attached to their motion to strike several more documents:

(1) A December 2017 Order from the Juvenile Court permitting DHR to place the Child with his maternal grandparents in Tennessee pursuant to the Interstate Compact for Placement of Children and setting the terms of that placement;

(2) A November 2018 Notice of Dismissal filed by DHR noting the Child was no longer dependent because neither the DCFS nor DHR had any present safety concerns with the Child being placed with the Parents;

(3) A December 2018 Motion to Enter an Order filed by DHR, asking the Juvenile Court to rule on DHR's prior notice of dismissal and asking to be relieved of custody of the Child; and

(4) A November 2022 order dismissing the case in Juvenile Court because the petitioner had died.

(Doc. 62 at 7-13).

Following their motion to strike, the Parents requested permission to file new evidence and a sur reply addressing the arguments raised by Williams for the first time in her reply brief. (Doc. 65). Many of the documents the Parents propose to submit are duplicative of those already in the record. The new documents include (1) DHR's March 2016 Ex Parte Motion for Immediate Pick Up Order, and (2) the Parents' answer to DHR's Petition for Dependency. (Doc. 65-1).

## III.   Standard of Review

In considering a motion to dismiss, the court must accept the plaintiff's allegations as true and construe them in a light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

The parties have submitted numerous state court records. Federal Rule of Evidence 201(b) allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Under this rule, court filings are public records whose existence is not subject to reasonable dispute. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53–54 (11th Cir. 2006). Therefore, at the motion-to-dismiss stage, courts may consider documents filed in a

prior court case. *Id.* However, courts may not take judicial notice of court records for the truth of the matters asserted in those records. *See, e.g., United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *Legacy Ent. Grp., LLC v. Endemol USA Inc.*, No. 3:15-CV-0252-HES-PDB, 2015 WL 12838795, at *4 (M.D. Fla. Oct. 1, 2015); *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1129 (S.D. Fla. 2019). Instead, courts may only take judicial notice of court records for the limited purpose of establishing the fact of such litigation, the record's existence, and the record's content. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277—78 (11th Cir. 1999); *Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1366 (M.D. Fla. 2014) (citing *Jones*, 29 F.3d at 1553); *MB Plaza, LLC v. Wells Fargo Bank, NA*, No. 10-24241-CIV, 2011 WL 3703143, at *1 (S.D. Fla. Aug. 23, 2011).

## IV.    Motion to Strike/Motion to File Sur reply

The Parents ask the court to strike the documents Williams attached to her reply brief because it would violate due process to consider documents and new arguments made for the first time on reply. (Doc. 62). They also object to the consideration of these documents in the context of a motion to dismiss because they are not central to the Parents' claims. The Parents offer no analysis to support this second argument, instead focusing on Williams's failure to attach the documents to her initial motion to dismiss.

Williams argues the Eleventh Circuit allows consideration of a document that is not physically attached to a pleading, citing *Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005). This is true—a court may consider a document incorporated by reference *in the pleading*. *See id.* However, *Day* does not hold a party may introduce evidence or argument for the first time on reply. In the absence of authority requiring otherwise, this court will not consider exhibits submitted or arguments made for the first time on reply.[4, 5] *See Pearl v. Mad Engine, Inc.*, No. 7:12-CV-2850-TMP, 2015 WL 5179517, at *3 (N.D. Ala. Sept. 4, 2015) ("A new issue cannot be raised for the first time in a reply brief the non-movant has no opportunity to answer."). The Parents' motion to strike will be granted to the extent this court will not consider evidence submitted or arguments made for the first time on reply. The court will, however, consider Williams's arguments that address those made by the Parents in their response brief.

Because the court will not consider Williams's reply evidence or arguments made for the first time in her reply brief, the Parents' motion to permit a response to new evidence is moot and will be denied accordingly.

---

[4] Williams continues to make substantive arguments regarding her motion to dismiss in her response to the Parents' motion to strike. The court will not consider these arguments as they do not address the motion at issue—the Parents' motion to strike.

[5] The court notes the documents Williams submitted relating to the petition for writ of habeas corpus would have little impact on the analysis of this case because the Court of Civil Appeals ruled the Blount County Circuit Court lacked subject matter jurisdiction; therefore, neither court could rule on the substance of the Parents' claims. *See B.J.C. v. Blount Cnty. Dep't of Hum. Res.*, 263 So. 3d 705 (Ala. Civ. App. 2017), Doc. 60-1 at 52.

## V.    Motion to Dismiss

Williams seeks dismissal of this action on five grounds: (1) collateral estoppel, (2) qualified immunity, (3) failure to state a claim for malicious prosecution and abuse of process, (4) the *Rooker-Feldman* doctrine, and (5) state agent immunity.

The Eleventh Circuit previously concluded Williams is not entitled to qualified immunity at this stage of the proceedings. *See Crider v. Williams*, No. 21-13797, 2022 WL 3867541 (11th Cir. Aug. 30, 2022); Doc. 51-1. Williams does not cite to different allegations made in the third amended complaint that might have some bearing on this analysis. Because the Eleventh Circuit has already squarely rejected Williams's claim of qualified immunity at this stage, this court declines to address it further.

Each of Williams's remaining arguments is based on her contention that the Juvenile Court previously found (1) probable cause existed to support the petition Williams filed and (2) it had jurisdiction over the Child.

### A. Collateral Estoppel

Collateral estoppel, also called issue preclusion, is "'[a]n affirmative defense barring a party from relitigating an issue determined against that party in an earlier action, even if the second action differs significantly from the first one.'" *Bowers v. Wal-Mart Stores, Inc.*, 827 So. 2d 63, 67 n.2 (Ala. 2001) (quoting BLACK'S LAW

DICTIONARY § 256 (7th ed. 1999)); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim.") (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). The Eleventh Circuit gives a prior state court judgment preclusive effect in a subsequent federal action if "'(1) the courts of the state from which the judgment emerged would do so themselves; and (2) the litigants had a full and fair opportunity to litigate their claims and the prior state proceedings otherwise satisfied the applicable requirements of due process.'" *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1036 (11th Cir. 2014) (quoting *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1329 (11th Cir. 2003)); *see also Allen v. McCurry*, 449 U.S. 90, 96 (1980) (noting that by enacting the Full Faith and Credit Act codified at 28 U.S.C. § 1738 "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so"). Collateral estoppel "reduce[s] unnecessary litigation," "foster[s] reliance on adjudication," and "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen*, 449 U.S. at 95–96.

The requirements for application of the collateral estoppel doctrine are not stated in an entirely consistent manner in the Alabama case law but generally and

collectively are said to be that (1) the issue that was presented in the prior action is "identical" to the issue that is presented in the subsequent action; (2) the issue was "actually litigated" in the prior action by a court of "competent jurisdiction"; (3) resolution of the issue was "necessary to the prior judgment"; and (4) the prior action involved the "same parties" as the subsequent action. *Lloyd Noland Found., Inc. v. HealthSouth Corp.*, 979 So. 2d 784, 795–96 (Ala. 2007); *Stinnett v. Kennedy*, 232 So. 3d 202, 220 (Ala. 2016) (internal quotation marks omitted). Additionally, the ruling on the issue generally must be embodied in a final judgment on the merits before the ruling will be given preclusive effect. *See First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 825 F.2d 1475, 1480 (11th Cir. 1987) ("Under Alabama law, res judicata and collateral estoppel principles do not apply until there is a final judgment rendered on the merits of the case.") (collecting cases).[6]

   In her initial brief, Williams offers no analysis of the preclusion factors to the facts of this case. Instead, she asserts: (1) "privity is present" because Williams

---

[6] Res judicata, also termed claim preclusion, is a judicially-created doctrine that is "closely related" to collateral estoppel, or issue preclusion. *Lee L. Saad Const. Co. v. DPF Architects, P.C.*, 851 So. 2d 507, 516 (Ala. 2002). It precludes the relitigation of *claims* that were, or could have been, adjudicated in a prior action. *Id.*; *see also Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990) (distinguishing collateral estoppel from res judicata on the ground the former does not require identity of the causes of action). Like collateral estoppel, res judicata requires that the parties to the prior action be the same as the parties to the subsequent action – or, in the precise parlance of res judicata, that there be a "substantial identity" of the parties – and that a judgment on the merits has been rendered in a prior case by a court of competent jurisdiction. *Lee L. Saad Const.*, 851 So. 2d at 516.

was an employee of Blount County DHR, who initiated the dependency action in the Juvenile Court, and (2) the question of probable cause and jurisdiction were "essential issues previously litigated in the dependency action." (Doc. 55 at 8-9).

Because Williams bears the burden of demonstrating the preclusive effect of the prior adjudication (*see Lee L. Saad Const.*, 851 So. 2d at 520), these conclusory statements—which are wholly unsupported by any analysis—are insufficient to secure dismissal based on collateral estoppel. However, the court will address two points raised by the parties' briefing.

### 1. Final Judgment on the Merits

In her initial brief, Williams does not address whether the April 2016 and October 2018 Orders were "final judgments" for purposes of issue preclusion. The Parents argue these orders were interlocutory and thus vacated by the ultimate dismissal of the dependency action. Williams addresses the issue of finality for the first time in her reply brief to respond to this argument.

She cites the Alabama Court of Civil Appeals' opinion concerning an action for writ of habeas corpus filed by the Parents. *B.J.C. v. Blount Cnty. Dep't of Hum. Res.*, 263 So. 3d 705 (Ala. Civ. App. 2017). In *B.J.C.*, the court held the Parents could have raised their jurisdictional challenge in either a direct appeal of the March 3, 2016 order (which is not the basis of Willams's arguments) or through a motion under Alabama Rule of Civil Procedure 60(b)(4). The court observed:

> [A] "temporary custody award" or a "temporary order" as to custody is a "final" custody award or judgment. Despite its name, a temporary order as to custody is intended to remain effective until a party seeks to modify it. It may be modified if the trial court reviews the case and determines that changed circumstances that warrant a modification have come into existence since the last custody award. [*Hodge v. Steinwinder*,] 919 So.2d [1179,] 1182–83 [ (Ala. Civ. App. 2005) ]. Such an award is not a pendente lite award. *Id.*

*Id.* at 706 n2.

Alabama law equates finality for purposes of preclusion with finality for purposes of appeal. *See Parsons Steel*, 825 F.2d at 1480-81 (citing *Sterling Oil of Oklahoma, Inc. v. Pack*, 287 So. 2d 847, 861 (Ala. 1973)); *Battle v. Liberty Nat. Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) (citing *Parsons Steel*). "An appeal ordinarily lies only from a final judgment," and "[a] judgment is generally not final unless all claims, or the rights or liabilities of all parties, have been decided." *Hoegh v. Burton*, 3 So. 3d 911, 912 (Ala. Civ. App. 2008); *see also* Ala. Code § 12-22-2 (providing appeal lies to appropriate appellate court "[f]rom any final judgment of the circuit court"); Ala. R. Civ. P. 54(b) (providing "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties" and "is subject to revision at any time before the entry of judgment adjudicating all the claims and rights and liabilities of

all the parties").[7] Interlocutory orders are not subject to appeal, *McKiever v. King & Hatch, Inc.*, 366 So. 2d 264, 265 (Ala. 1978); *Bon Harbor, LLC v. United Bank*, 20 So. 3d 1263, 1266 (Ala. 2009), or entitled to preclusive effect, *Bowers*, 827 So. 2d at 67; *Ex parte Renasant Bank*, 185 So. 3d 1134, 1137 n.2 (Ala. Civ. App. 2015). But "ordinarily 'interlocutory orders merge with final judgment' and, therefore, most interlocutory orders may be appealed once a final judgment is entered." *Caton v. City of Pelham*, 329 So. 3d 5, 19 (Ala. 2020) (quoting *McCormack v. AmSouth Bank, N.A.*, 759 So. 2d 538, 541 (Ala. 1999)); *see also Barnes v. George*, 569 So. 2d 382, 383 (Ala. 1990) (holding order granting new trial pursuant to Rule 60(b) of the *Alabama Rules of Civil Procedure*, generally a non-appealable interlocutory order, was properly before court on appeal where plaintiffs took appeal from final judgment entered after second trial).

Williams does not argue the October 30, 2018 Order was final and appealable. That order is interlocutory, and Williams cites no final judgment or other final order into which that interlocutory order could have merged. *See Caton*, 329 So. 3d at 19. The Parents assert the dismissal of the Juvenile Court action resulted in the vacatur of the October 2018 Order because under Alabama law, the

---

[7] "The only exception to this rule of finality is when the trial court directs the entry of a final judgment pursuant to Rule 54(b) [of the *Alabama Rules of Civil Procedure*]." *Hoegh*, 3 So. 3d at 912. Rule 54(b) permits a trial court to certify an order disposing of fewer than all claims as final "upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Ala. R. Civ. P. 54(b).

dismissal of an action generally annuls previously entered orders, rulings, or judgments. *See Ex parte Sealy, L.L.C.*, 904 So. 2d 1230, 1236 (Ala. 2004) (quoting 27 C.J.S. *Dismissal and Nonsuit* § 39 (1959)) (holding a voluntary dismissal renders the proceedings a nullity and "'carries down with it previous proceedings and orders in the action'"); *McNairy v. McNairy*, 416 So. 2d 735, 736 (Ala. 1982) ("The motion to dismiss was granted by the circuit court, which also held for naught all prior orders of the probate court."); *see also* 24 Am. Jur. 2d Dismissal § 89. Williams avoids responding to this argument by focusing solely on whether the April 2016 Order was final for purposes of appeal. She has therefore not demonstrated the October 2018 Order is final and thus entitled to preclusive effect.

The court is persuaded the April 2016 Order is final under Alabama law for purposes of appeal; however, the parties have not addressed whether such an order is a final "judgment" as contemplated by Alabama law governing collateral estoppel. *See Parsons Steel, Inc.*, 825 F.2d at 1480 ("Under Alabama law, res judicata and collateral estoppel principles do not apply until there is a *final judgment* rendered on the merits of the case." (emphasis added; citing *Food Serv. Distributors, Inc. v. Barber*, 429 So. 2d 1025, 1027 (Ala. 1983); *Owen v. Miller*, 414 So. 2d 889, 890–91 (Ala. 1981); *Pooley v. State*, 470 So. 2d 1337, 1339 (Ala. Crim. App. 1985)). In addition, Williams has not addressed whether the dismissal

of the juvenile action impacts the preclusive effect of the April 2016 Order.[8] As the party invoking collateral estoppel, Williams bears the burden of proving each element exists. Because she has failed to demonstrate or otherwise argue the April 2016 Order is a final "judgment" and entitled to preclusive effect, her motion to dismiss is due to be denied.

### 2.  Actual Litigation of Identical Issues

Even if the April 2016 Order can be considered a "final judgment," and thus potentially entitled to preclusive effect, the court is not yet convinced the Juvenile Court actually determined any issues identical to those present in this action.

The April 2016 order states (1) Williams and the Parents were present; (2) motions to intervene filed by the Child's grandparents were granted; (3) the Juvenile Court was advised there was no agreement for relative placement; and (4) the Juvenile Court advised the parties' counsel there was insufficient time for a full hearing and instead heard oral arguments from counsel. (Doc. 55 at 19). Relevant to this case, the Juvenile Court (1) found the Child "should be placed in the shelter care of the Blount County Department of Human Resources by reason of the following: there is no suitable parent willing and able to provide care and supervision of the child"; and (2) ordered the Child to be placed in the custody of

---

[8] Williams cites no authority to support her argument a temporary custody order—even one "final" for purposes of appeal—that is no longer effective should be given preclusive effect. As even she notes, that order was always subject to modification.

Blount County Department of Human Resources and remain there pending further order. (Doc. 55 at 19). Importantly, the Order does not recite the arguments raised by counsel—there is no indication Williams's knowledge of the Parents' or Child's residency was raised at the hearing or a basis for the Juvenile Court's decision. Because there is no indication the Juvenile Court made any ruling on Williams's knowledge of the Parents' and Child's residence—indeed, the Order specifically states the Juvenile Court did not hold an evidentiary hearing—the court is not inclined to find the April 2016 Order's holding is identical to the issues present here.

Further, Williams fails to discuss entirely the Parents' allegation she lied to the Tennessee Court about whether the Child had resided in Alabama for six months. For purposes of this motion, this court takes as true the Parents' allegation that Williams knowingly misrepresented her knowledge of the Parents' and Child's residence to persuade the Tennessee Court to issue the order to seize the Child and deliver him to Alabama. Williams's intentional misrepresentations are the basis for this action. As the Eleventh Circuit observed, "the Child could not have been ordered taken if the Tennessee court lacked jurisdiction. Nor is this just a theoretical matter. The Tennessee judge's question about the Child's length of residence in Alabama shows that the Tennessee judge wouldn't have issued the

Attachment Pro Corpus Order had Williams truthfully answered his question about the Child's length of residence in Alabama." *Crider*, 2022 WL 3867541, at *7.

## B. The Rooker-Feldman Doctrine

Williams invokes the *Rooker-Feldman* doctrine to argue this action should be dismissed because the Juvenile Court "determined both jurisdiction and probable cause in Williams' favor." (Doc. 55 at 13). As with her discussion of collateral estoppel, she offers no substantive analysis of this argument.

The *Rooker-Feldman* doctrine prevents federal district courts from reviewing state court decisions because they lack jurisdiction over final state-court judgments. *Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021). *Rooker-Feldman* is a narrow doctrine applied in only limited circumstances. *Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021). A district court should dismiss an action under *Rooker-Feldman* only if the state-court loser directly attacks the underlying state court judgment and complains of injuries "caused by the judgment itself." *See id.* at 1212. A "claim that at its heart challenges the state court decision itself—and not the statute or law which under-lies that decision—falls within the doctrine." *Id.* at 1211. *Rooker-Feldman* does not, however, bar a claim "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* Nor does the district court inquire whether the complaint as a whole seems to challenge a prior state-court judgment. *Id.* at 1213.

Williams cites *S. v. Webb*, 602 F. Supp. 2d 374 (D. Conn. 2009) to set forth the four elements of the *Rooker-Feldman* doctrine: (1) the federal court plaintiff lost in state court; (2) the federal court plaintiff complains of injuries caused by the state court judgment; (3) the federal court plaintiff seeks the district court's review and rejection of the state court judgment; and (4) the state court judgment was rendered before the initiation of the district court proceedings. (Doc. 55 at 13). The substance of Williams's brief, however, offers no analysis of these factors to the facts of this case. Citing a case for a general legal principle, without more, falls short of the showing required to secure a dismissal on this basis. Additionally, Williams has not demonstrated the Parents "lost" in state court—to the contrary, the Parents specifically allege DHR dismissed the petition, and there is no allegation there is any "judgment" for the Parents to attack. Further, as discussed above, Williams has not shown the Juvenile Court made any findings about Williams's knowledge of the Parents' and Child's residence or misrepresentations to the Tennessee Court. Accordingly, Williams's motion to dismiss on this basis will be denied.

## C. State Agent Immunity

Williams argues she is entitled to state agent immunity as recognized by the Alabama Supreme Court in *Ex parte Cranman* 792 So. 2d 392, 405 (Ala. 2000), *holding modified by Hollis v. City of Brighton*, 950 So. 2d 300 (Ala. 2006).

However, the *Cranman* court recognized a state agent, like Williams, "*shall not* be immune from civil liability in [] her personal capacity (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Id.* (emphasis added).

Williams contends that because the Parents do not allege the facts asserted in her petition were false, but instead simply complain the state court lacked jurisdiction over the petition, she is entitled to state agent immunity. This argument misrepresents the Parents' complaint. Here, the Parents allege Williams lied to the Knox County judge to convince him to sign an order permitting her to seize the Child. By claiming Williams intentionally lied, the Parents have alleged she acted "willfully, maliciously, fraudulently, in bad faith," and beyond her authority. If proven true, Williams is not immune from civil liability. *See id.* Therefore, Williams's motion to dismiss based on state agent immunity will be denied.

### D. Malicious Prosecution

Williams seeks the dismissal of the Parents' malicious prosecution claim, asserting it is based on the Parents' allegation she lacked probable cause and knew the Juvenile Court did not have jurisdiction over the petition. She contends that

because the Juvenile Court found there was probable cause to seize the Child and because it found jurisdiction was proper in Alabama, the Parents cannot prove malicious prosecution. She argues the Juvenile Court found probable cause because it found (1) there was no suitable parent able to care for the Child, (2) continuation in the home was not in the Child's best interest, (3) reasonable efforts to prevent the Child's removal from the home were not possible, (4) placement in foster care was the least restrictive alternative, and (5) jurisdiction was proper in Alabama. She provides no cite for these findings; however, it appears she is referencing both the April 2016 Order (for items 1-4) and the October 2018 Order (for item 5).

To prove their claim of malicious prosecution under Alabama state law, the Parents must show: (1) Williams initiated a judicial proceeding; (2) she lacked probable cause to do so, (3) she acted with malice, (4) the judicial proceeding terminated in the Parents' favor, and (5) damages. *See Hambrick v. Spire Alabama, Inc.*, No. 2200979, 2022 WL 1124986, at *2 (Ala. Civ. App. Apr. 15, 2022).

First, the Juvenile Court did not make an explicit finding of probable cause, and Williams has provided no definition or other authority to allow this court to analyze whether the April 2016 Order satisfies the elements of probable cause to initiate a dependency petition. Second, as discussed above, the explicit finding of jurisdiction was made in the October 2018 Order, but Williams has not

demonstrated that Order is entitled to any preclusive effect.[9] Accordingly, Willams's motion to dismiss the Parents' claim for malicious prosecution will be denied.

### E. Abuse of Process

As with her arguments regarding malicious prosecution, Williams contends the Parents' abuse of process claim should be dismissed because the Juvenile Court already determined (1) Williams did not act with an improper motive to control the proceedings without probable cause and (2) it had jurisdiction of the case. She offers no other argument or analysis of the sufficiency of the Parents' claim.

"The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice." *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998) (citing *Triple J Cattle, Inc. v. Chambers*, 621 So. 2d 1221, 1225 (Ala. 1993)). Abuse of process is a separate claim from malicious prosecution: "Malicious prosecution concerns the wrongful *issuance* of process; abuse of process concerns the wrongful use of process *after it has been issued.*" *C.C. & J., Inc.*, 711 So. 2d at 950 (emphasis added). In Alabama, "an abuse of process claim is proper only when the action results in the issuance of

---

[9] Notably, the October 2018 Order's finding of jurisdiction appears to rest on the Tennessee court's disclaiming jurisdiction. (Doc. 55 at 21). The Tennessee court declined and refused to accept jurisdiction of the case because it would be inconsistent for it to assume jurisdiction after ordering removal of the Child to Alabama. (*Id.*). This is not a finding that the Child resided in Alabama for six months or that Williams acted in good faith.

some form of special process from the court, such as a writ of garnishment." *Ramsey v. Leath*, 706 F.2d 1166, 1169 (11th Cir. 1983).

To state a viable cause of action for abuse of process, the Parents must allege "that a suit had been legally filed for a proper purpose" but, once filed, "the process of the court . . . had been improperly used." *Ancora Corp. v. Stein*, 445 F.2d 431, 433 (5th Cir. 1971). Where a defendant has done nothing more than carry out the process to its authorized conclusion, even with bad intentions, an abuse of process claim is not stated. *Willis v. Parker*, 814 So. 2d 857, 863 (Ala. 2001) (citation omitted).

Williams's arguments regarding abuse of process suffer from the same problems as her arguments regarding malicious prosecution. The Juvenile Court did not find she acted with a proper motive, nor has she demonstrated the October 2018 Order is entitled to any preclusive effect. Accordingly, Williams's motion to dismiss the Parents' claim for abuse of process will be denied.

## VI.   Conclusion

For the reasons set forth above, the Parents' motion to strike is **GRANTED**. (Doc. 62). The Parents' motion to permit response to new evidence is **DENIED** as **MOOT**. (Doc. 65). Williams's motion to dismiss is **DENIED**. (Doc. 55).

The court previously granted the parties' request to stay the discovery deadlines pending resolution of Williams's motion to dismiss. (Docs. 66, 68).

Accordingly, that stay is **LIFTED.** This matter is **SET** for a telephone conference on **October 17, 2023**, at **11:00 a.m**. The parties are **DIRECTED** to dial 877-336-1831 five minutes before the telephone conference begins. The access code is 2778178.

      **DONE** this 27th day of September, 2023.

_Staci G. Cornelius_
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE