## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JANEMARIE CRIDER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-01518-SGC |
| | ) | |
| ANITA WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER[1]

In their third amended complaint, the plaintiffs, Janemarie Crider and Tucker Anderson (collectively, "the Parents"), name Anita Williams as the sole defendant and assert three causes of action: (1) a violation of 42 U.S.C. § 1983, (2) malicious prosecution, and (3) abuse of process. (Doc. 54).[2] The Parents have moved for partial summary judgment, and Williams has moved for summary judgment in full. (Docs. 103-107). The parties' cross-motions are fully briefed and ripe for adjudication. (Docs. 108-111, 113, 121, 126).

For the reasons stated below, the court will grant summary judgment in favor of Williams on the Parents' state law claims for malicious prosecution and abuse of

---

[1] The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc.20).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

process and will deny the Parents' motion for partial summary judgment. Further, the Parents will be given an opportunity to address a fatal flaw with their § 1983 claim, identified by the court after a hearing in October 2024. *See* FED. R. CIV. P. 56(f).

## I.  Standard of Review

The standard of review for cross motions for summary judgment is the same as when only one party files a motion for summary judgment. *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1242–43 (N.D. Ga. 2014) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)). Under Rule 56 of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, the non-moving party must go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Id.* All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

Where, as here, a federal district court has diversity jurisdiction over state law claims, the court must apply the substantive law of the forum state. *See McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Consequently, substantive Alabama law applies to the Parents' malicious prosecution and abuse of process claims.

## II. Undisputed Facts

A.C. (the "Child") was born to the Parents on June 26, 2015, in Tennessee. (Doc. 104-1 at 3). On the day the Child was discharged from the hospital, the Parents were arrested for possession of marijuana. (Doc. 107-4 at 17; Doc. 107-5 at 13). Anderson ultimately pleaded guilty, and the charges against Crider were dismissed. (Doc. 107-4 at 33-34; Doc. 107-5 at 13-14).

3

At some point between August 2015 and March 2016, the Parents were present for an extended time in Blount County, Alabama; there is conflicting evidence as to whether they moved there for a period of several months, were simply visiting for a few months, or were residing in both Alabama and Tennessee during this period. Regardless of the length of their stay and the reason for their presence in Alabama, the Parents stayed in a dwelling provided for them by Anderson's mother, Andrea Anderson ("Andrea"). (Doc. 104-1 at 17). The Parents allege that, at some point, Andrea told them she would use the Department of Human Resources to take the Child from them. (*Id.* at 15).

In March 2016, Williams worked as an investigator for the Blount County Department of Human Resources ("DHR"). (Doc. 107-3 at 2). On March 18, 2016, she went to the Parents' home to investigate a report concerning the Parents and Child. (*Id.*). When Anderson answered the door, Williams told him someone had reported the Parents were using marijuana and distributing it to neighborhood children and the Child was not receiving medical care. (*Id.*). Anderson told Williams the Parents had been in Alabama for 3-4 months, his wife was bedbound, he had not had time to find a pediatrician, and he did not smoke marijuana. (*Id.*). Although Anderson did not allow Williams to enter the home, he did permit her to see the Child. (*Id.*). Williams thought the Child appeared to be healthy. (*Id.*). Anderson and

Williams made an appointment for her to return a week later on March 23, 2016. (*Id.*).

The Parents traveled to Knoxville, Tennessee on March 23, 2016, the day of their follow-up appointment with Williams.[3] (Doc. 104-1 at 15, 34). When Williams returned to the Parents' home for the appointment, no one was home; instead, she found a note stating:

> To whom it may concern, We have had personal issues arise & had to leave suddenly. Please leave your contact info & we will get back to you upon return. Thank you, God Bless

(Doc. 107-3 at 53). Williams left her card. (*Id.* at 42, 53). She also spoke to a neighbor, who told her the family had lived in the house since the end of the prior year. (Doc. 104-2 at 23).

On March 24, 2016, Williams received a phone call from Andrea. (Doc. 107-3 at 3). Williams told Andrea she would not discuss the case but asked Andrea to have the Parents contact Williams. (*Id.* at 12). On March 29, Andrea contacted Williams and told her:

- Anderson had Asperger syndrome;

- Crider had mental health issues;

- the Parents frequently fought;

---

[3] In their brief, the Parents assert this was because of Andrea's comments to them, but the testimony they cite does not directly support that contention.

- Anderson previously told Andrea that Crider tested positive for THC before she delivered the Child;

- the night the Child came home from the hospital after his birth, the Parents were arrested for marijuana possession;

- the Parents had been appointed a social services caseworker in Tennessee after their arrest;

- Anderson was put on unsupervised probation and the charges against Crider were dropped;

- the Child had seen a pediatrician only once and was losing weight;

- the Parents and Child had moved to an Alabama home Andrea rented for them;

- Crider and the Child travelled back and forth between Knoxville and Blount County until the first week of September;

- Anderson told Andrea the family returned to Knoxville, Tennessee.

(*Id.* at 13, 25-28, 39, 43-44). Andrea then emailed Williams to report that Anderson suffered from anxiety, depression, and anger issues and he had placed his hands on both her and Crider's throats. (*Id.* at 25). She also reported (1) Crider had a personality disorder, major depression, post-traumatic stress disorder, and many medical issues; (2) she suspected both Parents self-medicated with drugs; (3) Anderson had moved to Alabama following his arrest; (4) Crider and the Child traveled back and forth to Tennessee until the first week of September; (5) Crider spent a "good bit of time" in Knoxville during November; and (6) Andrea had arranged for the last of the family's belongings to be moved to Alabama in January. (*Id.* at 25-28).

That same day, Williams contacted Ryan Malory with the Tennessee Department of Children Services ("TDCS") and learned TDCS's case against the Parents was closed. (*Id.* at 14). Malory told Williams to contact TDCS's intake department if the Child was in Knox County, Tennessee. (*Id.* at 14).

On March 30, 2016, the Parents traveled to the Blount County Courthouse in Alabama, and Crider filed against Andrea a petition for protection from abuse in which Crider alleged (1) she was a resident of Blount County and (2) she left her residence because of the alleged abuse by Andrea.[4] (Doc. 107-5 at 16, 40). The Child remained in Knoxville with Crider's parents (the "Maternal Grandparents"). (Doc. 107-5 at 35). Williams spoke with Blount County Circuit Judge Stephen King about Crider's petition, and Judge King stated he would contact Williams when the family returned to court. (Doc. 107-3 at 17).

That same day, Andrea emailed Williams to report that her attorney saw the Parents at the Blount County Courthouse and she saw the Parents' car at Anderson's father's home in Cullman County, Alabama. (*Id.* at 17, 30, 32, 39). She told Williams the Parents spent the prior night at Anderson's father's house in Cullman. (*Id.*). She later emailed Williams to report the Tennessee address at which the Parents were staying. (*Id.* at 39).

---

[4] Crider did not fill in the form's blank indicating where she was temporarily located. (Doc. 107-5 at 41).

Williams called the Parents again and left a voicemail. (*Id.*). She also contacted Blount County DHR attorney Sherri Mitchell to begin the process for a pick-up order. (*Id.*). Mitchell drafted a petition for dependency based on information she received from Williams and Stan Glasscock, Andrea's attorney. (Doc. 107-7 at 2). According to the information Mitchell received:

> [Anderson] had made representations that the family was in Tennessee. However, following those statements, [Andrea] had located their vehicle in Cullman and Judge King had seen them at the Blount County Courthouse. Immediately preceding the filing of the petition [for dependency], Mr. Glasscock also advised [Mitchell] that the parents were staying in Cullman County and were evading the investigation. Ms. Williams filed the petition. At the time the petition was filed, [DHR] really had no idea where the parents were but believed that they remained in Alabama and were evading the investigation.

(Doc. 107-7 at 2). The Parents never responded to Williams's attempts at contact, so on March 31, 2016, DHR filed in the Juvenile Court of Blount County, Alabama (the "Juvenile Court") a petition for dependency, alleging the Child may be at risk because of the Parents' illegal drug use and domestic violence and the Parents were actively avoiding DHR's investigation (the "Dependency Action"). (Doc. 107-1 at 3). The petition, signed under oath by Williams, included the following allegations:

- On March 18, 2016, DHR received a report that the Parents were smoking marijuana, Anderson was selling marijuana, the Child had not been vaccinated or taken to a doctor since he was six weeks old, and the Parents were arrested on drug charges the day the Child was discharged from the hospital following his birth.

- When Williams visited the Parents' home, Anderson stated he did not use or sell marijuana, Crider was practically bedridden with fibromyalgia, he

was busy with work, they had not had time to find a pediatrician, and they had only been in Alabama 3-4 months. Anderson was trying to get ready for work. He did not permit Williams to enter the house, but he brought the Child outside. The Child had no obvious marks or bruises and appeared healthy. Williams stated she would return the following week.

- When Williams returned to the Parents' home the following week, she found a note from the Parents stating they had to leave because personal matters had come up. Williams left her card with a note for the Parents to call her. As of the date of the petition, the Parents had not called her. Williams called Anderson, but no one ever answered. DHR received additional information that the Parents were avoiding DHR, claiming they had moved back to Knoxville, but they were really staying with Anderson's father.

- DHR learned Crider tested positive for THC the day the Child was born and the Parents were both arrested on marijuana charges the day they arrived home from the hospital. Anderson pleaded guilty to misdemeanor possession and was still on probation in Tennessee, and the charges against Crider were dismissed.

- DHR was concerned about the Parents' alleged use of marijuana and Crider's reported mental and physical illnesses. Anderson had issues with depression, anxiety, and anger management. The Parents were reported to have numerous, volatile arguments.

- On March 30, 2016, Crider filed a Petition for Protection from Abuse against Andrea in which she claimed to live in Blount County and in Knoxville.

- After the Parents were arrested for marijuana possession, Anderson returned to Blount County and Crider remained in Knoxville; however, "they" were travelling back and forth between Alabama and Tennessee for several months. Crider and the Child moved to Blount County in January 2016 and the family resided in Blount Springs. Since March 18, 2016, they had not resided at their residence in Blount Springs.

- DHR believed the Parents were actively avoiding its investigation and the Child was at risk from their illegal drug use, lifestyle, and domestic violence and needed to be placed in DHR's custody until it could investigate the Parents.

(*Id.* at 3-5). Judge King signed an order awarding DHR temporary legal and physical custody that same day; the order, which contains both a physical and electronic stamp, was entered into the AlaFile/AlaCourt system at 2:01 p.m.[5] (*Id.* at 7).

Williams then took the custody order to Anderson's father's home in Cullman County, but she did not locate the Child.[6] (Doc. 107-2 at 16). Mitchell then prepared and filed an *ex parte* motion for immediate pickup order stating the Child was not at the Cullman home. (Doc. 107-1 at 8). That motion, filed at 2:34 p.m. and signed by Mitchell, stated: (1) the Parents were last reported to be visiting Anderson's father's house in Cullman; (2) DHR could not locate the family at Anderson's father's house; (3) the Parents stated they resided in both Alabama and Tennessee; and (4) DHR believed the Parents fled Alabama to avoid DHR's investigation. (*Id.*). Judge King granted that motion at 3:00 p.m., entering an Order to Detain and Amended Order for Temporary Shelter Care. (*Id.* at 9). Williams then sent a protective service alert

---

[5] AlaCourt is an online system that provides access to Alabama state trial court records; AlaFile is the web-based application by which registered users electronically file and receive service copies of court documents related to the AlaCourt system. *See* https://efile.alacourt.gov/.

[6] The Parents insist that Williams testified she traveled to Cullman on March 29, 2016. The exchange references Williams's March 30, 2016 note regarding an email from Andrea stating Andrea rode by Anderson's father's home in Cullman and saw the Parents' car there. (Doc. 104-2 at 35). At her deposition, Williams first stated the entry "is where I went to Cullman looking for the [C]hild," but she almost immediately clarified, "That is not where I went to [Anderson's father]." (*Id.* at 7). She then stated she did travel to Cullman on March 29, but there was no record of that in her notes. (*Id.* at 8). Williams later clarified that she did not travel to Cullman until after filing the Dependency Action. (*Id.* at 16).

to all Alabama DHRs and faxed the notice and order to both Cullman County DHR and the Cullman City Police Department. (Doc. 107-3 at 5).

On April 4, 2016, Andrea moved to intervene in the Dependency Action, alleging the Parents were unfit and unable to maintain custody of the Child. (*See* Doc. 107-1 at 72). Also on April 4, 2016, Crider appeared for a hearing on her petition for protection from abuse. (Doc. 107-5 at 20). After that hearing, she met with Williams and Mitchell regarding the Dependency Action. (*Id.* at 21). The Parents were served with the petition and temporary custody orders and were appointed counsel. (*Id.* at 21). After the meeting, Williams traveled to Knox County, Tennessee to locate the Child. (Doc. 107-3 at 5). On April 5, 2016, she spoke with Knox County Juvenile Court Judge Timothy Irwin. (*Id.* at 5). Judge Irwin asked about the Parents' residence, and Williams replied that to the best of her knowledge they had been in Alabama for more than six months. (*Id.*).

Judge Irwin testified that while he did not recall the conversation with Williams, his normal practice is to review the submitted documentation, determine whether there was a prior or pending action in Tennessee, and to contact the judge who issued the pickup order. (Doc. 107-15 at 2).[7] Judge Irwin issued an Attachment

---

[7] Although Judge King signed the pickup order, Judge Irwin's affidavit states that he contacted Judge Sherry Burns, a Blount County Juvenile Court judge, and determined Alabama was the appropriate jurisdiction. (Doc. 107-1 at 9; Doc. 107-15 at 2). Further, the record does not indicate Judge Burns was involved in the Child's case before Williams traveled to Tennessee. Therefore,

Pro Corpus, ordering the Child be delivered to DHR. (Doc. 104-10). Williams then seized the Child from the Maternal Grandparents' home in Tennessee. (Doc. 107-5 at 3).

A shelter care hearing occurred in Alabama on April 5, 2016. (Doc. 107-7 at 19). According to Judge Sherry Burns, to whom the Dependency Action was ultimately assigned:

> The petition for dependency filed by Ms. Williams disclosed several possible jurisdictional issues. . . . [Judge Burns] was aware the child had been born in Tennessee. [She] was aware that the father had returned to Blount County shortly after the child's birth and that the mother remained in Knoxville and the family traveled back and forth between the two states. The petition clearly stated that the mother moved to Alabama with the child in January 2016.

(Doc. 107-8 at 2). At the shelter care hearing, Judge Burns

> determined that [she] had proper jurisdiction. To [her] knowledge, there had been no prior custody order and there was no other pending action for custody at the time the [DHR] petition was filed. There was conflicting evidence presented regarding the parents' residency. The parents asserted that there was no basis for emergency jurisdiction and they had not resided in Alabama for six months but were only visiting and thus Alabama was not the home state. However, other family members asserted that they had in fact moved to Alabama and had been residing in the State for over six months and were so residing at the time of the petition. The information presented in court by the parents and family members coincided with the information that Ms. Williams presented to the Court. Ms. Williams did not present any information that differed from the information that was provided by the Alabama

---

it is unclear whether Judge Irwin's statement relates to Williams's appearance before him in April 2016 or to a later discussion between Judge Irwin and Judge Burns, *see infra*.

family members to her and to [Judge Burns]. [The court] did not find
the parents' position compelling or credible.

(*Id.* at 3). Because there was no agreement for placement of the Child with a relative,
Judge Burns awarded temporary custody to DHR and ordered the Parents to
complete drug screens. (*Id.*; Doc. 107-7 at 19). Anderson tested positive for
marijuana. (Doc. 107-3 at 24).

On April 14, 2016, the Maternal Grandparents moved to intervene in the
Dependency Action, stating that while they lacked sufficient knowledge to dispute
or confirm the allegations in DHR's petition, they agreed it would be in the Child's
best interests "to not allow custody to be placed with [the Parents] at this time."[8]
(Doc. 107-1 at 10). They alleged that since his birth the Child's home state was
Tennessee and it would be in his best interests to be placed with them pending
resolution of the Dependency Action. (*Id.*).

That same day, the Maternal Grandparents also filed in the Dependency
Action a Motion to Transfer the action to Knoxville, Tennessee. (Doc. 107-10 at 18).
They alleged Alabama had not been the Child's home state for six months when the
Dependency Action was filed. (*Id.*). They further argued Tennessee was the Child's
home state so the case should be transferred to Tennessee. (*Id.*).

---

[8] This record is stamped filed on April 15, 2016, but was signed on April 14.

13

In May 2016, the Maternal Grandparents filed an "Emergency Petition for Jurisdiction and Temporary Custody" in the Juvenile Court for Knox County, Tennessee. (Doc. 107-1 at 21). They asked that court to enter an order "removing jurisdiction of [the] matter from the Juvenile Court for Blount County, Alabama," assuming jurisdiction of the Dependency Action, and granting them custody of the Child. (*Id.*). The Tennessee petition, which was assigned to Judge Irwin, was dismissed with prejudice on August 22, 2016, because of the ongoing action in Blount County. (Doc. 107-10 at 14).

On August 10, 2016, the Maternal Grandparents and Parents filed in the Dependency Action a "Joint Motion to Transfer" that action to Tennessee. (Doc. 107-1 at 26). On August 23, 2016, the Juvenile Court held a hearing on the question of jurisdiction. (Doc. 107-8 at 14). No testimony was taken, and according to Judge Burns, no party requested to take testimony or otherwise offer evidence. (*Id.* at 3). Judge Burns and Judge Irwin communicated pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act, but the parties were not present during their discussion. (*Id.* at 14). Both Judge Burns and Judge Irwin agreed the action should remain in Alabama. (*Id.* at 3).

At a November 21, 2016 hearing, Judge Burns ordered the Child to remain in DHR's custody. (Doc. 107-1 at 30). The Parents moved to dismiss or, alternatively,

for a 72-hour hearing. (*Id.* at 31). The Parents' motion was denied, and the record reflects no attempt by them to appeal. (*Id.* at 33).

In February 2017, the Parents filed in the Circuit Court of Blount County a petition for a writ of habeas corpus to challenge the Juvenile Court's jurisdiction over the Dependency Action. (Doc. 107-11 at 95). That petition was ultimately denied because the Circuit Court found (1) the Parents and Child were present in Blount County Alabama between January 25, 2016, and March 23, 2016; (2) DHR investigated allegations regarding the Child's safety while he was present in Blount County; and (3) the Blount County Juvenile Court had jurisdiction to adjudicate allegations of conduct regarding a minor Child that allegedly occurred in Blount County. (*Id.* at 69). On appeal, the Alabama Court of Civil Appeals reversed and remanded the case because it determined the Circuit Court lacked jurisdiction to hear the petition and the jurisdictional challenge should have been resolved in the Juvenile Court rather than through a habeas action in the Circuit Court. (*Id.* at 25-30; *see also B.J.C. v. Blount Cnty. Dep't of Hum. Res.*, 263 So. 3d 705 (Ala. Civ. App. 2017)). The Court of Civil Appeals specifically noted that the Parents had failed to appeal the Juvenile Court's custody order or file a post-judgment motion challenging jurisdiction. (*Id.* at 29).

On December 18, 2017, the Juvenile Court ordered the Child be placed with the Maternal Grandparents in Tennessee. (Doc. 107-1 at 44-46). On March 7, 2018,

DHR requested a hearing to place the Child with the Parents because TDCS had approved placement of the Child with the Parents in Tennessee. (*Id.* at 47). The motion was set for hearing on May 23, 2018, but then reset for September 2018 because the Parents did not attend the May hearing. (*Id.* at 49-50). Although DHR requested an earlier hearing date, its request was denied because the Juvenile Court did not have any earlier availability. (*Id.* at 50-52). The Parents requested the court continue the September hearing date because of their medical issues, and the hearing was again reset to October 24, 2018. (*Id.* at 54-56). When the Parents did not appear at the October 2018 hearing, the court generally continued the hearing, stating:

> Case called for trial on today's date. Neither parent deemed it necessary to appear for today's proceedings. At [] this time this matter is CONTINUED and shall be reset upon the motion of any party once the time the parents have their priorities in order and decide to place the best interest of the minor child first and foremost.

(*Id.* at 57).

On September 21, 2018, the Parents filed another emergency petition for jurisdictional hearing in Tennessee. (Doc. 107-10 at 4). They alleged Williams had either purposefully or negligently misled the Tennessee courts about the Child's residence when initiating the Dependency Action and complained the Alabama courts lacked jurisdiction over the matter because the Child had not resided in Alabama for six months. (*Id.*). Judge Irwin again dismissed their petition with prejudice because of the ongoing case in Blount County. (*Id.* at 3). Although the

Parents appealed, that appeal was dismissed because "it appear[ed] to the Court that the [Parents have] elected not to pursue [their] appeal." (Doc. 107-9 at 3, 7).[9]

On October 30, 2018, the Juvenile Court entered an order addressing the August 23, 2016 hearing. (Doc. 107-1 at 58). The court found (1) the Child and Parents were residing in Blount County, Alabama during the timeframe at issue in the Petition for Dependency, (2) no other court, including the Tennessee juvenile court, would accept jurisdiction of the matter, and (3) Blount County was the appropriate jurisdiction to determine the dependency of the Child. (*Id.*).

On November 1, 2018, DHR filed a notice of dismissal because TDCS had approved the Child's placement with the Parents, the Parents had completed reunification services, and the Child no longer remained dependent.[10] (*Id.* at 59). The notice stated: "The child is no longer dependent in that neither [TDCS] nor [DHR] has any *present* safety concerns with the child being placed with the parents." (*Id.*) (emphasis added). According to Mitchell, the dismissal was based on the Parents' circumstances in 2018 and did not relate to their circumstances in 2016. (Doc. 107-7 at 4). In December 2018, DHR moved the Juvenile Court for an order relieving it of custody of the Child and dismissing it as a party to the Dependency Action. (Doc.

---

[9] The Parents' appeal was set for a hearing to determine whether the appeal would be pursued and whether attorneys or a guardian *ad litem* needed to be appointed. (Doc. 107-9 at 4). The Parents were cautioned: "If you fail to appear, the Appeal shall be dismissed." (*Id.*).

[10] According to Mitchell, the Interstate Compact on the Placement of Children prohibited placement of the Child without Tennessee approval. (Doc. 107-7 at 4).

107-1 at 66-67). The motion again stated that DHR no longer believed the Child was dependent because neither it nor TDCS had present safety concerns with the Child being placed with the Parents and the Parents had complied with reunification services. (*Id.*).

The Juvenile Court set DHR's Notice of Dismissal and Motion to Enter Order for a February 28, 2019 hearing. (*Id.* at 68). When the Parents failed to appear at that hearing, the court reset the hearing for April 1, 2019. (*Id.* at 69). DHR then requested a permanency hearing, which was set for April 29, 2019. (*Id.* at 70-71).

The Parents did not personally appear at the permanency hearing. (*Id.* at 73). On April 30, 2019, the Juvenile Court consolidated Andrea's motion to intervene and petition for dependency and dismissed DHR as a party to the proceedings. (*Id.* at 72). That same day, the Juvenile Court also entered a "Permanency Hearing Order" ordering the Child to remain in DHR's custody. (*Id.* at 73). Two days later, on May 2, 2019, the Juvenile Court entered an amended order awarding custody of the Child to the Maternal Grandparents, who were then the temporary placement for the Child. (*Id.* at 76). According to Judge Burns, the Parents made very little effort to reunify with the Child and appeared to defer responsibility for his care (and their own care) to the Maternal Grandparents. (Doc. 107-8 at 3). While Judge Burns believed the Child was safe and well-cared for by the Maternal Grandparents, she did not believe the same would be true if he was in the Parents' care. (*Id.*). She "set

the case multiple times" and gave the Parents many opportunities to be reunified with the Child, but she did not find credible their excuses for their failure to appear. (*Id.*). Judge Burns further stated that "[f]ollowing a statutorily permanency hearing applicable to dependency cases involving DHR, I entered [a] final order dated May 2, 2019 dismissing DHR as a party and awarding custody to the maternal grandparents." (*Id.* at 4). According to Judge Burns, "[t]his order was a final dependency order with a disposition of custody to the maternal grandparents," and the Parents did not appeal from this order. (*Id.*). Judge Burns consolidated Andrea's claims "such that her request for visitation was separate and did not affect the finality of the judgment." (*Id.*).

On May 15, 2019, the Parents filed a motion for clarification. (Doc. 107-1 at 81). According to their motion, the May 2, 2019 order "appear[ed] to be an outright award of custody." (*Id.*). The Parents argued this was inappropriate because the Child had never been found to be dependent, DHR filed a pleading acknowledging the Child was not dependent, and no adjudicatory hearing or finding of dependency had occurred. (*Id.*). The Parents requested the Juvenile Court enter an order clarifying that the award of custody was temporary. (*Id.* at 82). It appears the Juvenile Court never ruled on this motion.

Andrea died on September 13, 2022. (*Id.* at 103). Her claims became moot upon her death, and on November 16, 2022, the Juvenile Court entered an "Order of

Dismissal" that stated: "The Petitioner is now deceased. The Petition is hereby Dismissed and the Case is closed." (Doc. 104-24; Doc. 107-8 at 3).

According to Judge Burns, custody of the Child remains with the Maternal Grandparents. (Doc. 107-8 at 3). At her deposition, the Maternal Grandmother testified that the Child has lived with her since May 2, 2019, and she is not aware of any order amending or changing the Child's custody placement with her. (Doc. 107-12 at 10).

## III.    Procedural History

The Parents and Maternal Grandparents filed this action on October 1, 2020. (Doc. 1). They amended their complaint once as a matter of course before Williams answered. (Doc. 4). They again amended their complaint with leave of court in December 2020, stating three counts: (1) a violation of 42 U.S.C. § 1983; (2) an Alabama state law claim for malicious prosecution; and (3) an Alabama state law claim for abuse of process. (Doc. 12).

Williams moved to dismiss the second amended complaint, and this court granted the motion in September 2021 because it (1) held the Maternal Grandparents lacked standing, (2) found Williams was entitled to qualified immunity on the Parents' § 1983 claim, and (3) declined to exercise supplemental jurisdiction over the Parents' remaining state law claims. (Doc. 30 at 13, 27, 28).

The Parents (but not the Maternal Grandparents) appealed, and on August 30, 2022, the Eleventh Circuit vacated this court's dismissal and remanded the case. (Doc. 51-1). The Eleventh Circuit concluded that (1) based on the allegations of the second amended complaint, Williams was not entitled to qualified immunity in the context of a motion to dismiss and (2) this court could not decline to hear the Parents' state law claims because it had original diversity, not supplemental, jurisdiction over those claims. (*Id.*).

In September 2022, after Williams answered the second amended complaint, the Parents asked to amend their complaint again. (Docs. 46, 49). Their motion was granted, and the Parents filed their third amended complaint in October 2022. (Doc. 54). Williams moved to dismiss the third amended complaint; this court denied that motion on September 27, 2023. (Docs. 55, 76).

While Williams's motion to dismiss was pending, the parties conducted discovery, and the Parents filed separate motions for partial summary judgment. (Docs. 70-75; 78-79; 86). Williams also moved for summary judgment. (Docs. 80-85). The parties' summary judgment filings were stricken because (1) the Parents' separation of their summary judgment arguments into two distinct motions circumvented the page limitations in the Initial Order and (2) the parties' approach to summary judgment resulted in unnecessarily complex briefing and scattered the parties' arguments and evidence across multiple filings. (Doc. 87). The parties were

directed to each resubmit a single dispositive motion that complied with the Initial Order. (Doc. 87).

Williams answered the third amended complaint on October 20, 2023. (Doc. 92). In November 2023, Williams filed a suggestion of bankruptcy, and this action was stayed. (Doc. 95). On December 11, 2023, the Bankruptcy Court for the Northern District of Alabama granted the Parents' Emergency Motion to Lift the Stay for the limited purpose of proceeding to a settlement or judgment. (Doc. 97-1).

In February 2024, the parties filed their respective motions for summary judgment. (Docs. 103-107). A hearing on the parties' motions was held in October 2024. (*See* Oct. 8, 2024 minute entry). In its order setting the motions for hearing, the court advised the parties that the hearing would focus on the legal effect of six orders from the Juvenile Court and the effect of those orders on Williams's affirmative defenses. (Doc. 122). During the hearing, the Parents clarified their position that the Dependency Action terminated in their favor upon the November 2022 dismissal and closure of the case.

## IV.    Analysis

Williams argues she is entitled to summary judgment because the Parents have failed to establish claims for malicious prosecution or abuse of process. (Doc. 106 at 3). She also asserts the Parents' claims are barred by qualified immunity, the *Rooker-Feldman* doctrine, issue preclusion, state-agent immunity, and statutory

immunity. (*Id.*). The Parents seek partial summary judgment on several factual issues and ask the court to charge the jury accordingly. (Doc. 103). They also seek summary judgment on Williams's affirmative defenses. (*Id.*).

As explained below, the Parents have failed to put forth evidence to support each element of their claims for malicious prosecution and abuse of process under Alabama state law.[11] Neither side addressed the substantive elements of the Parents' § 1983 claim for a violation of procedural due process. Because the court concludes this claim likely fails as a matter of law, the parties will be given an opportunity to address the court's conclusions before entering judgment in Williams's favor. *See* FED. R. CIV. P. 56(f). And the court will deny the Parents' motion for partial summary judgment.

## A. Malicious Prosecution

To prove their claim of malicious prosecution under Alabama state law, the Parents must show (1) Williams initiated a judicial proceeding, (2) she lacked probable cause to do so, (3) she acted with malice, (4) the judicial proceeding terminated in their favor, and (5) damages. *See Ex parte Harris*, 216 So. 3d 1201,

---

[11] Because Williams is entitled to summary judgment on substantive grounds, the court declines to address Williams's affirmative defenses. Williams largely reiterates the arguments presented and rejected in her second motion to dismiss. Because her arguments concerning the affirmative defenses fail to address the concerns the court laid out in its order denying Williams's motion to dismiss, the court would reject those arguments for the reasons stated in its September 2023 Memorandum Opinion and Order. (*See* Doc. 76).

1214 (Ala. 2016). Malicious prosecution claims are disfavored in Alabama because "public policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge." *Id.* (internal quotations and citations omitted). Because neither DHR's Dependency Action nor any of the Tennessee Actions terminated in the Parents' favor, Williams is entitled to summary judgment on the Parents' state law claim for malicious prosecution.

In their briefing, the Parents argue the Dependency Action terminated in their favor because (1) on May 2, 2019, DHR's petition was dismissed on its own motion and (2) after Andrea died, all claims were dismissed in a final order. (Doc. 108 at 23). This argument misrepresents the substance of the Juvenile Court's order. While the May 2, 2019 "Amended Order Dismissing Blount County DHR as a Party and Order Consolidating Petitions" does dismiss DHR as a party, it vests custody of the Child with the Maternal Grandparents, not the Parents. (Doc. 104-23). The Parents have not explained how an order vesting custody of the Child in the Maternal Grandparents, rather than the Parents, can possibly be an order terminating the Dependency Action in favor of the Parents. In fact, at the summary judgment hearing, the Parents instead argued that the November 2022 order dismissing the

case because of Andrea's death is the operative order terminating the action in their favor.[12]

The court rejects both arguments. Under Alabama law, when two actions are consolidated, "they do not lose their separate identities, and the order of consolidation does not merge the two actions into one civil action." *Ex parte 3M Co., Inc.*, 42 So. 3d 1228, 1230 (Ala. 2010) n.4 (Ala. 2010).[13] Further, "the parties and pleadings in one action do not become parties and pleadings in the other." *Id.* Instead, an order consolidating cases represents a judicial determination that the interests of justice would be better served by trying the cases together in one setting. *See Ex parte Hill*, 166 So. 3d 701, 704 (Ala. Civ. App. 2014).

DHR instituted the dependency action because of legitimate concerns about the safety and wellbeing of the Child. Following a hearing, the Juvenile Court awarded custody of the Child to DHR. On a court-ordered drug screen, the father

---

[12] There is another fatal problem with this position. Even if the November 2022 "Order of Dismissal" was the final adjudication in the Parents' favor, it necessarily follows that DHR's petition remained pending until November 16, 2022. (Doc. 104-24). Because this lawsuit was filed two years earlier in October 2020, the *Younger* abstention doctrine would prevent this court from hearing the Parents' claims. *See Leonard v. Alabama State Bd. of Pharmacy*, 61 F.4th 902 (11th Cir. 2023). "'[T]he date of filing of the federal complaint is the relevant date for purposes of determining *Younger's* applicability' because 'the Supreme Court held that *Younger* applies if state court proceedings were pending at the time of the filing of the federal complaint.'" *Hale v. Pate*, 694 F. App'x 682, 683–84 (11th Cir. 2017) (quoting *The News-J. Corp. v. Foxman*, 939 F.2d 1499, 1510 (11th Cir. 1991)).

[13] *See also League v. McDonald*, 355 So. 2d 695, 697 (Ala. 1978) (when actions are ordered consolidated, "each action retains its separate identity and thus requires the entry of a separate judgment.")

tested positive for marijuana, despite his prior representations to Williams that he did not use marijuana. Both Andrea and the Maternal Grandparents sought to intervene in the Dependency Action stating it would be in the Child's best interests to be placed apart from the Parents. Approximately eighteen months later, Judge Burns placed the Child with the Maternal Grandparents in Tennessee. Although DHR later moved to have the Child placed with the Parents based on their eventual compliance with reunification services, the Juvenile Court did not grant that motion; it instead awarded custody to the Maternal Grandparents.

By filing their May 15, 2019 motion for clarification, the Parents acknowledged the May 2, 2019 Amended Order is an outright award of custody. According to the record before this court, no action was taken on the May 15, 2019 motion, and the Parents did not seek appellate or mandamus review. This court declines to find that an order vesting custody of the Child in individuals other than the Parents terminated the Dependency Action in the Parents' favor. The May 2, 2019 Amended Order dismissing DHR as a party resolved DHR's petition for dependency, although the action continued as to Andrea's separate motion to intervene. To the extent the Parents prevailed, they prevailed on Andrea's separate petition as a result of her death, not DHR's petition. Indeed, at her February 2023 deposition, the Maternal Grandmother stated that custody of the Child remained with the Maternal Grandparents. (Doc. 107-12 at 10).

The court understands the Parents contend that the Juvenile Court improperly awarded custody without a sufficient hearing. This court, however, is not the appropriate forum to attempt to challenge a state court order. Instead, those concerns could have and should have been resolved in the Alabama state courts via an appeal or a Rule 62(b) motion. *See, e.g., B.J.C.*, 263 So. 3d 705.

Further, the Parents have produced no order resolving the Tennessee actions in their favor. There is no order vacating the April 5, 2016 Attachment Pro Corpus, and both Tennessee actions filed by the Parents were ultimately dismissed. Accordingly, to the extent the Parents seek to recover for Williams's procurement of the Tennessee Attachment Pro Corpus to obtain custody of the Child, that claim fails because there is no evidence any of the Tennessee actions were terminated in their favor.

For these reasons, the Parents' state law malicious prosecution claim fails, and summary judgment will be entered in Williams's favor.[14]

---

[14] The Parents also cannot show Williams lacked probable cause to instigate the Dependency Action. "Probable cause in the context of a malicious-prosecution claim is defined as a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged." *Ex parte Harris*, 216 So. 3d 1201, 1214 (Ala. 2016) (internal quotations and citations omitted). In a malicious prosecution case, a court asks whether "one or more undisputed facts [is] found in the record [] establishing that the defendant acted in good faith on the appearance of things as they existed when suit was filed, based upon direct evidence, or upon circumstantial evidence and inferences that can reasonably be drawn therefrom." *Id.* (quoting *Moon v. Pillion*, 2 So. 3d 842, 846 (Ala. 2008)). While the Parents insist Williams lacked probable cause because she allegedly knew both that the Child had not lived in Alabama for six months and that the Parents left Alabama to avoid Andrea, not DHR, they ignore the substantial, undisputed evidence that (1) DHR received

**B. Abuse of Process**

In Alabama, a plaintiff seeking to establish an abuse of process claim must demonstrate three elements: (1) the existence of an ulterior purpose, (2) a wrongful use of process, and (3) malice. *Seibert v. Stricklen*, No. SC-2023-0741, 2024 WL 1814532, at *4 (Ala. Apr. 26, 2024). Abuse of process is a separate claim from malicious prosecution: "[m]alicious prosecution concerns the wrongful *issuance* of process; abuse of process concerns the wrongful use of process *after it has been issued*." *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998) (emphasis added). In Alabama, "an abuse of process claim is proper only when the action results in the issuance of some form of special process from the court, such as a writ of garnishment." *Ramsey v. Leath*, 706 F.2d 1166, 1169 (11th Cir. 1983).

To prevail here, the Parents must demonstrate Williams wrongfully used the issuance of process against them to achieve an improper result. *See Seibert*, 2024 WL 1814532 at *4. To the extent Williams did nothing more than carry out the

---

a report that the Parents were arrested for possession of marijuana, they continued to possess and use marijuana, the Child had not seen a physician in several months, and both Parents suffered from mental health issues; (2) Williams received several reports regarding the Parents and Child, their residence, and their location; (3) the Parents did not keep their appointment with Williams or return her phone calls; (4) the Parents left a note indicating an intent to return to the Blount County home; and (5) Anderson's Petition for Protection from Abuse stated she was a Blount County resident. The Parents also fail to acknowledge that Williams's petition disclosed that the Parents traveled back and forth between Alabama and Tennessee for several months, Crider and the Child moved to Blount County in January 2016, and the family had not resided in Blount Springs after March 18, 2016. Because these undisputed facts establish that Williams acted in good faith on the appearance of things as they existed, she had probable cause to initiate the Dependency Action.

process to its authorized conclusion, even with bad intentions, the Parents do not have a claim for abuse of process. *See Willis v. Parker*, 814 So. 2d 857, 863 (Ala. 2001) (citation omitted). The Parents must show the process was "use[d] to obtain a result which the process was not intended by law to effect. If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint *there is no abuse.*" *Id.* (internal citations and quotation omitted, emphasis in original).

Williams contends she is entitled to summary judgment on the Parents' abuse of process claim because the Parents have no evidence Williams had some motive other than protecting the Child. (Doc. 107 at 33). The Parents respond by relying on their own motion for partial summary judgment, which neither addresses the elements of abuse of process nor distinguishes that claim from their malicious prosecution claim. (*See* Doc. 108 at 24, referring the court to Doc. 105 at 1-12, 19-20, 23-25).[15]

Alabama courts have provided examples of proper claims for abuse of process. In *Farm Country Homes, Inc. v. Rigsby*, the court found abuse of process where the defendant used an ejectment action to obtain a judgment against his ex-wife so he could then garnish the alimony he paid her. 404 So. 2d 573, 575 (Ala.

---

[15] Specifically, the Parents argue Williams lied to initiate the Dependency Action, but they do not address the elements of abuse of process, which concerns the use of process *after* an action is initiated.

1981). In *Warwick Development Co., Inc. v. GV Corp.*, the court held that initiating

unlawful detainer hearings as retribution for the plaintiffs suing the defendant was

sufficient to state a claim for abuse of process, even if the unlawful detainer action

could be used to test the validity of a lease. 469 So. 2d 1270, 1274 (Ala. 1985). The

court also noted that a claim for abuse of process would exist where an individual

initiated criminal proceedings for the purpose of collecting a debt.

Here, however, the Parents' arguments here relate to the issuance of process—

that is, the initiation of the Dependency Action, the Alabama pickup order, and the

subsequent Tennessee Attachment Pro Corpus—not the subsequent use of that

process. They have failed entirely to articulate how Williams wrongfully used the

issuance of process against them, and their arguments relate only to a malicious

prosecution claim. *See, e.g., Seibert*, 2024 WL 1814532 at *4. The Parents have

presented no evidence that Williams used the Dependency Action for anything other

than its intended purpose—to determine whether the Child was dependent.

Accordingly, Williams is entitled to summary judgment on the Parents' claim for

abuse of process.

**C. § 1983 Claims**

The Parents seek to recover under 42 U.S.C. § 1983 for Williams's alleged violation of their Fourteenth Amendment due process rights.[16] (Doc. 54 at 11). Pursuant to the Fourteenth Amendment, states may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. During the summary judgment hearing, the Parents focused on an alleged violation of their Fourteenth Amendment substantive due process rights to direct the care and/or custody of the Child. As the Eleventh Circuit recognized, however, the substance of the Parents' allegations—that Williams allegedly lied to various courts to obtain custody of the Child—implicates a procedural due process violation. *See Crider*, 2022 WL 3867541 at *5 (stating that proceedings based on false statements implicate a lack of procedural due process and citing *Johnston v. Borders*, 36 F.4th 1254, 1272 (11th Cir. 2022) and *Brown v. Wainwright*, 785 F.2d 1457, 1458 (11th

---

[16] At the summary judgment hearing, the Parents suggested their third amended complaint, the operative pleading, includes a § 1983 action for malicious prosecution in violation of the Fourth Amendment. The Eleventh Circuit previously read the second amended complaint to include such a claim. *See Crider v. Williams*, No. 21-13797, 2022 WL 3867541, at *3 (11th Cir. Aug. 30, 2022). Although the Parents are represented by counsel and have now filed four versions of their complaint (two of which postdate the Eleventh Circuit's opinion), their third amended complaint does not invoke the Fourth Amendment. In any event, as with a malicious prosecution claim under Alabama law, the elements of Fourth Amendment malicious prosecution require the Parents to prove that an action was instituted against them without probable cause and was ultimately terminated in their favor. *See, e.g., Laskar v. Hurd*, 972 F.3d 1278, 1285 (11th Cir. 2020). As previously explained, neither DHR's Dependency Action nor any of the Tennessee actions terminated in the Parents' favor. Thus, any Fourth Amendment malicious prosecution claims would fail as well.

Cir. 1986)). Nevertheless, the Parents have no substantive due process claim because "[s]ubstantive due process prohibits the government from engaging in certain activity regardless of the procedure used to implement that activity. Since the government may intervene in the family relationship when following proper procedures upon appropriate facts, [the Parents have] no constitutional right which can survive procedural due process." *See Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (citing *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261 (1990)). In other words, the Parents did not have an absolute right to direct the care and/or custody of the Child.

To succeed on a procedural due process claim, the Parents must establish: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *See Huntsville Senior Servs. v. Alabama Dep't of Pub. Health*, 645 F. Supp. 3d 1254, 1262 (N.D. Ala. 2022) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). There is no dispute the Parents suffered a deprivation of a constitutionally protected liberty interest—the right to direct the care and custody of the Child—because of state action through DHR. Consequently, the Due Process Clause entitled them to "notice and some form of a hearing before state action" could deprive them of that interest. *See id*., 645 F. Supp. 3d at 1267. Importantly, however, "'unless the state refuses to make available a means to remedy the deprivation,' the claimant has not been denied

a meaningful opportunity to be heard." *Id.* (quoting *Barr v. Jefferson Cnty. Barber Comm'n*, 250 F. Supp. 3d 1245, 1255 (N.D. Ala. 2017)); *see also McKinney v. Pate*, 20 F.3d 1550, 1563 (11th Cir. 1994); *Foxy Lady, Inc. v. City of Atlanta, Ga.*, 347 F.3d 1232, 1236 (11th Cir. 2003); *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000). This is not an exhaustion requirement; instead, this principle recognizes that "due process violations do not even exist unless no adequate state remedies are available." *Cotton*, 216 F.3d at 1331, n.3. Further, it is not a requirement that states courts were actually involved in or asked to provide a remedy in the specific case before the federal court. *See Huntsville Senior Servs.*, 645 F. Supp. 3d at 1267. "Federal courts' refusal to entertain procedural due process claims 'unless inadequate state procedures exist to remedy an alleged procedural deprivation' makes good sense; 'the state must have the opportunity to remedy the procedural failings of its agencies, in the appropriate fora' such as 'state courts,' before being made subject to a claim for constitutional malfeasance." *Id.* (quoting *Cotton*, 216 F.3d at 1331).

Because state remedies were available to them, it appears the Parents' procedural due process claim fails. Alabama law permitted them to appeal the custody orders or file Rule 60(b) motions:

> The parents in this case filed a petition for the writ of habeas corpus in the circuit court, alleging a procedural violation in the juvenile court. Although the parents did not file a timely appeal to this court regarding the juvenile court's March 31, 2016, order awarding temporary custody

of the child to DHR, the question whether the juvenile court's order was
void could have been raised in a Rule 60(b)(4), Ala. R. Civ. P., motion
filed in the juvenile court.

*B.J.C.*, 263 So. 3d at 707. Thus, as the Alabama Court of Civil Appeals recognized,

there were at least two state remedies available to the Parents to address any denial

of due process that resulted from Williams's actions.[17] Alabama law also permits a

party to file a petition for writ of mandamus. *See* Ala. R. App. P. 21. Further, the

Parents acknowledged during the summary judgment hearing they could have

appealed the April 2016 order granting temporary custody of the Child to DHR. (*See*

Summary Judgment hearing transcript at 41-42). The availability of these state

remedies precludes the Parents' procedural due process claim. *See, e.g., Huntsville*

*Senior Servs.*, 645 F. Supp. 3d at 1267.

Consequently, it appears Williams is entitled to summary judgment on the

Parents' § 1983 claim for a violation of procedural due process. However, neither

party has addressed the substantive elements of a procedural due process claim.

---

[17] The court further questions whether the Parents' procedural due process claim under § 1983
claim is barred by the two-year statute of limitations. *See Beverly v. BP Expl. & Prod. Inc.*, No.
CV 17-3045, 2022 WL 4242515 (E.D. La. Sept. 14, 2022) (explaining that § 1983 actions in
Alabama are governed by the two-year statute of limitations codified at Ala. Code § 6-2-38(l)).
Here, Williams's challenged actions appear to have been completed no later than April 5, 2016,
and the Parents contended, as early as March 2017 when they filed their petition for writ of habeas
corpus, the Petition for Dependency contained untrue allegations. (Doc. 107-11 at 82). Further, the
Parents were aware of Williams's alleged misrepresentations to the Tennessee court no later than
September 21, 2018, when they filed their emergency petition for jurisdictional hearing in
Tennessee. (Doc. 107-10 at 6). Thus, even assuming the discovery rule applied in this case, the
two-year statute of limitations would have expired September 18, 2020, 13 days before this lawsuit
was filed on October 1, 2020.

Federal Rule of Civil Procedure 56(f) allows the entry of summary judgment on grounds not raised by the parties after giving the parties notice and a reasonable time to respond. Accordingly, the parties will be given an opportunity to address the court's conclusions.

### D. The Parents' Motion for Summary Judgment

The Parents ask the court to enter summary judgment in their favor on Williams's affirmative defenses. As explained above, because Williams is entitled to summary judgment on substantive grounds, the court declines to address the numerous affirmative defenses she raised. The Parents also ask the court to enter the following jury instructions:

> (1) Williams misrepresented to the Juvenile Court in Blount County, Alabama that the child was in Cullman, Alabama to give the court jurisdiction; the statement was false and Williams knew it was false because she traveled to Cullman, Alabama on March 29, 2016 and ascertained that the child was not in Cullman before she signed the Petition for Dependency;

> (2) the Child lived in Tennessee for seven months following his birth and had lived in Alabama for two months before returning to Tennessee;

> (3) Williams's statement to the Judge in Tennessee that the child had lived in Alabama for six months prior to the filing of the petition was false testimony;

> (4) the Tennessee court would not have signed the Attachment Pro Corpus Order but for Williams's statement that the Child had, to the best of her knowledge, lived in Alabama for six months before the petition was filed; and

(5) Williams's acts in Tennessee violated the Parents' procedural due process rights by denying the Parents a hearing in Tennessee both before the seizure of their child and after the seizure of their child.

(Doc. 103 at 1-2). The Parents would not be entitled to a jury instruction on any of these points because they have failed to establish any of these issues are undisputed.

First, the Parents are not entitled to any jury instruction that Williams misrepresented to the Juvenile Court that the child was in Cullman, Alabama to give the court jurisdiction. The Petition for Dependency did not state the Child was definitely in Cullman, only that DHR received information that the family was staying in Cullman. The Parents have not demonstrated this allegation is false. Further, the Parents insist Williams knew the Child was not present in Cullman because she first testified she traveled to Cullman on March 29, 2016, before the Petition for Dependency was filed. But Williams later clarified she traveled to Cullman only after filing the petition. Viewed in the light most favorable to Williams, the court must accept as true her clarification that she traveled to Cullman after filing the petition.

Second, the Parents are not entitled to any jury instruction that the Child lived in Tennessee for seven months following his birth and had lived in Alabama for two months before returning to Tennessee. There is conflicting evidence about where the Child was located during the first several months of his life. The Parents' current testimony that the Child was in Alabama for only two months does not eliminate

36

their prior statements to Williams that he had been in Alabama for three to four months.

Next, the Parents are not entitled to any jury instruction that Williams falsely stated to Judge Irwin that the Child had lived in Alabama for six months prior to the filing of the Petition for Dependency. Viewed in the light most favorable to Williams, this statement was based on her decision to believe Andrea's information that the Child had moved to Alabama in September 2015 rather than Anderson's statements that the family had been in Alabama for three to four months.

Fourth, the Parents are not entitled to any jury instruction that the Tennessee court would not have signed the Attachment Pro Corpus Order but for Williams's statement that the Child had, to the best of her knowledge, lived in Alabama for six months before the petition was filed. The Parents presented no testimony from Judge Irwin establishing this as fact.

Finally, the Parents are not entitled to any jury instruction that Williams's acts in Tennessee violated their procedural due process rights by denying them a hearing in Tennessee both before the seizure of their child and after the seizure of their child. They have not explained why the Tennessee court's failure to provide them with what they insist is a hearing required by Tennessee law is Williams's responsibility.

## V.    Conclusion

For the foregoing reasons, no genuine issues of material fact exist regarding the Parents' claims for malicious prosecution and abuse of process. Accordingly, Williams's motion for summary judgment is **GRANTED IN PART** with respect to Counts II and III. (Doc. 106). The Parents' motion for partial summary judgment is **DENIED**. (Doc. 103).

Because neither party addressed the substantive elements of a procedural due process claim, the Parents may object to the court's conclusion with respect to their § 1983 claim (Count I) within 14 days of the date of entry of this Memorandum Opinion and Order. *See* Fed. R. Civ. P. 56(f) (a court may enter judgment on grounds not raised by a party after giving notice and a reasonable time to respond). Any reply from Williams is due within 7 days thereafter. If the Parents do not file a timely objection citing authority that would permit their procedural due process claim to proceed, the court will enter summary judgment in favor of Williams on Count I.

**DONE** this 31st day of March, 2025.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE